IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

## JACKSON, APRIL TERM, 1917.

G. T. WALLACE *et al.* v. C. McPHERSON *et al.*

## (*Jackson.* April Term, 1917.)

1. **CONTRACTS.** Public policy.

A contract by which one party, in consideration of sums to be paid monthly, agreed to remove from the city and remain absent so long as the adverse parties maintained their residences in such city, is not invalid, as contrary to public policy, since the freedom of the first party is not affected, as he can at any time return to the city by foregoing the stipulated payments. (*Post, p.* 463.)

2. **CONTRACTS.** Validity of object.

Any person *sui juris* may make any contract with another, which is not in violation of federal or State Constitutions or statutes, ordinances of cities or towns, or some rule of the common law. (*Post, p.* 464.)

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. —FRANCIS FENTRESS, Chancellor.

(458) [138 Tenn.

Evans & McCadden, for appellants.

S. L. Cockroft, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

This case involves the validity of a contract entered into between complainant and the defendant McPherson and wife, the latter a sister of the complainant; also another sister of the complainant and his brother. It was entered into on October 8, 1908, and recites a former contract of May 4th between the same parties, which had been violated, and sets forth the violation of that contract in the following terms:

"And whereas, the said George T. Wallace, party of the second part, has, since the execution of the said agreement, violated and broken the covenants of the same especially articles fourth and fifth thereof, in that he has visited the parties of the first part without their express or implied invitation, and he has annoyed and harassed them in various ways, and attempted to communicate with them, both by person and by letter, and has attempted violence to the property, if not the persons, of said parties of the first part, in violation of both the letter and spirit of said above-mentioned agreement, and family settlement of May 4, 1908."

The contract now under examination thereupon declared that of May 4th null and void. In this contract of October 8th the defendants, parties of the first part,

agreed to pay to George T. and his wife a stated sum monthly during their lives and the life of the survivor, and after their death to their son until his majority. After thus stating the consideration the contract proceeds:

"The said George T. Wallace agrees as an express and explicit condition to the fulfillment of any and all the conditions of this contract upon the part of the parties of the first part (his sisters, brother, and brother-in-law), that he, the said George T. Wallace, will, with his immediate family, Dolly W. Wallace and Thomas Jefferson Wallace, leave the city of Memphis, and Shelby county, Tennessee, and will not return to the same so long as any one of the parties of the first part has his or her permanent home in said city of Memphis and Shelby county, Tennessee. The said George T. Wallace further agrees that he will not visit any of the parties of the first part, save upon their express invitation, and that he, in no way, either personally, or by letter or messages, or otherwise, will harass, annoy, or in any manner communicate with them or either of them, and that, in the event he should violate this condition of this agreement, then and in that event each and every obligation of the parties of the first part set forth in this contract shall cease and end, and they shall be forever and finally discharged from any and all obligations whatever.

"And in the event that the said George T. Wallace violates this contract, he further agrees that he will in no wise, nor in any manner, either for himself or for

others, claim any right, title, or interest in or to the real and personal property constituting the estate of his deceased father; the prime object of this contract being to forever sever all relations between the said parties of the first part and the said George T. Wallace, and the said covenants, and each of them, are upon the express condition that there shall be absolutely no communication between the said parties of the first part and George T. Wallace, except upon the express invitation of the parties of the first part.''

The contract was signed by George T. Wallace and his wife, and by all of the parties of the first part. The parties of the first part, at the time the contract was entered into, had their permanent home in Memphis, and had long resided there. Complainant had also been long a resident of that city.

Within a few days after the execution of the contract, complainant removed from Tennessee to Florida. Several months after his removal to Florida, with his family, the parties of the first—that is, in December, 1908 —removed to Oklahoma, and remained there until January, 1911, in the interval paying to George T. the sums agreed on. While they were gone, the complainant George T. returned to Memphis. In January, 1911, the parties of the first part returned to Memphis to again make it their permanent home. A few months after their return, complainant again removed from Memphis and Shelby county, and remained away until some time in 1915. He then returned, over the energetic protest of the parties of the first part. On his re-

turn the parties of the first part refuse to pay anything further on the contract; then the bill in the present case was filed to enforce the monthly payments, claiming that the condition requiring his removal from and residence out of Memphis, and Shelby county, was against public policy and void. In argument it is also urged that the residue of the contract was sufficiently supported by that part which pertained to complainant's interest in his father's estate, as be ing in substance an engagement not to contest the will. It should be stated that the original contract between the parties had its origin in the fact that complainant's father had, as he believed, discriminated against him in his will, giving him far less than he gave the other children. The other children claimed that George T. Wallace had, during his father's lifetime, consumed, through donations made to him by his father, fully his share of the estate of the latter. The friction on this subject developed into the unpleasantness which is mirrored in the contract which we have recited. It is unnecessary to state the particular facts of the various acts of annoyance under which the parties of the first part suffered for a long time before the contract of May 4th was entered into. We shall only state one fact, which is that on one occasion the complainant threw a heavy missile against the glass composing part of the front door of the house, crashing the glass, and almost striking some members of the family as they sat within.

Was the condition requiring the removal of George T. Wallace from the city of Memphis and from Shelby county, and his remaining away so long as any of other parties to the contract maintained their permanent home in Memphis, a void condition? We are of the opinion that it was not void. Any person *sui juris* may make any contract with another which is not in violation of the federal or State Constitutions, federal or State statutes, some ordinance of a city or town, or some rule of the common law. There is no provision or rule of either that forbids such a contract or condition, unless the condition fall within that department of the common law which relates to contracts against public policy. Subtracting from the latter term all that concerns obligations contrary to constitutions, statutes, and municipal ordinances, and all known rules of the common law other than those applicable to public policy in its more general aspects, there remains only such matters as are contrary to the public morals, the public health, the public safety, or that can be reasonably held from any point of view as inimical to the public welfare. There is, indeed, no question of the public health or public safety, and, so far as morality is concerned, such an arrangement seems promotive of it. Being promotive of private morals, the safety of individuals comprising a part of the public, and the peace of families, it seems to result in a distinct gain to the public welfare. The complainant was by the contract denied residence only in one city and county of Tennessee. Every other county in the

State was open to him. He was not required to remove from the State; likewise the time was subject to his own control. He could resume his residence in Shelby county whenever he was willing to forego future payments. There was no forfeiture of sums previously paid, or any possibility of a claim for damages for breach of the contract. The condition imposed had no tendency to deprive complainant of any fundamental right of citzenship. He could vote and perform his other duties to the State as well in any other county as in Shelby. It is true he could not hold office either in Shelby county or in the city of Memphis while residing elsewhere, or vote there; but his change of residence was of his own choice, and by the same volition he could at any time, resume that residence, as already indicated, simply by foregoing future payments. For the same reason there was no impairment of his personal liberty. The obligation as to nonresidence was not more onerous than one assumes when he contracts with another for a fixed term to serve him for a consideration promised at some place distant from his home, and compliance with which may even necessitate his residence for the time agreed on in a distant State, or even in a foreign country. Such a contract may also, in part, at least, be assimilated to one wherein a citizen for a valid consideration agrees not to engage in a particular business for a specified time within a defined and limited area. The latter would, in one aspect, be more onerous, since the obligor in such an undertaking could be prevented by injunction from vio-

lating the contract; but in a case of the kind we have under examination no injunction could be obtained.

No authority has been cited in opposition to the conclusion we have reached, and our research has disclosed none. A discussion of the cases in which the question of public policy has been considered would require a volume. The subject cannot be confined within limits more definite than we have indicated. Every case must turn on its own facts. In reaching a conclusion, if there be found no antagonism to the Constitution, State or federal, State or federal legislation, any municipal ordinance, any authoritative decision, any rule of the common law, the court must always determine the controversy by a broad and comprehensive view of the public welfare; indeed, must be guided by what would be justly designated as true deliberative wisdom, if the inquiry were one occupying the attention of a legislative body, with a view to the enactment of a law commanding the public to pursue an indicated course of conduct, or inhibiting some course of conduct. The difference is that the court issues no general command, but decides only an isolated controversy. The underlying similarity in the exercise of the two functions is found in the fact that the principles prompting and controlling action are, in each instance, the same—a consideration of that which is most conducive to the public welfare and a determination in accord therewith. The descision by a court of last resort in any case may result in a rule

which will govern future controversies of a similar nature; but that is only an icident. It cannot affect the method of reaching the conclusion in a particular controversy.

The court of civil appeals and the chancellor having announced a dicision adverse to the validity of the condition attacked, and hence contrary to the conclusion we have reached, both judgments must be reversed, and a decree entered here in accord with the foregoing opinion.