REAVES LUMBER CO. *v.* CAIN-HURLEY LUMBER CO.

(*Nashville,* December  Term,  1925.)

1. **CONTRACTS.** Relief denied when fund involved is proceeds of fraud.

In action at law to determine interests in fund arising out of pay-
ment of excess insurance, relief will be denied, if fund arose from
collusive and fraudulent transaction, for courts of law, as well as
equity, will deny recovery on claim arising out of fraud.  (*Post,
pp.* 341-344.)

Cases cited and approved: Dedham Bank v. Chickering, 4 Pick.,
(Mass.), 314; Springfield Bank v. Merrick, 14 Mass., 322; Hunt v.
Knickerbacker, 5 Johns (N. Y.), 327; Hale v. Henderson, 23 Tenn.,
199; Pulse v. State, 24 Tenn., 108; McDaniel v. Douglas, 25 Tenn.,
227; McKisick v. McKisick, 19 Tenn., 431; Russell v. Pyland, 21
Tenn., 131; Parks v. McKamy, 40 Tenn., 297; Naff v. Crawford, 48
Tenn., 116; Stewart v. Lathop Co., 95 Tenn., 500; Bank v. Burke,
135 Tenn., 20; Security Mut. Ins. Co. v. Little et al., 119 Ark., 498;
Neece v. Joseph, 95 Ark., 552.

Cases cited and distinguished: Collins v. Blantern, 2 Wills, 341;
Fivaz v. Nicholls, 2 C. B., 501; Thornburg v. Harris, 43 Tenn., 172.

2. **APPEAL AND ERROR.** That basis of relief was illegal transaction
held ground for reversal, though not raised below.

Though question was not raised in motion for new trial or assign-
ment of errors, under rules of court of appeals reserving option to
notice errors overlooked, such court had authority to reverse and
dismiss, where relief was sought, based on an illegal transaction.
(*Post, p.* 344.)

Case cited and distinguished: Lumber Co. v. Thomas, 92 Tenn., 594.

3. **COMMERCE.** Contract for delivery f. o. b. cars presumed to contem-
plate shipment to buyer's place of business in another state.

Where Missouri corporation, which had not filed charter in Arkansas,
contracted with Arkansas lumber dealer for lumber to be delivered

"f. o. b. cars," it will be presumed that shipment to Missouri, making transaction interstate commerce, was contemplated, rather than violation of laws of Arkansas. (*Post, pp.* 344, 345.)

4. **COMMERCE.** Contract to sell lumber to buyer in another State held ''interstate commerce.''

Where seller of lumber was in different State than buyer, a foreign corporation unauthorized to do business in seller's State, and delivery was "f. o. b. cars," business done constituted interstate commerce; contracts to buy, sell, or exchange goods to be transported among the several States being interstate commerce. (*Post, pp.* 345-347.)

Cases cited and approved: K. C. Structural Steel Co. v. State of Arkansas, 46 S. Ct., 59; Dahnke-Walker Milling Co. v. Bondurant, 257 U. S., 282; Browning v. Waycross, 233 U. S., 23; Hogan v. Intertype Corp., 136 Ark., 52; Heating Co. v. McKnight, 140 Tenn., 564; United States v. Knight Co., 156 U. S., 1.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.— Hon. B. L. Capell, Judge.

J. T. Coston, for appellant.

Cavett & Buchanan, for appellee.

Mr. Justice Chambliss delivered the opinion of the Court.

Defendant, Reaves, appealed to the court of appeals from a judgment of $2,404 and $146.84 interest. That court reversed and dismissed the suit on the ground, not raised in the pleadings, that the fund which was the subject of the litigation was created by a transaction between these parties which was tainted with fraud; the legal maxim, *"Ex dolo malo non oritur actio,"* being given application. Petitioner, Cain-Hurley Lumber Company, here insists, first, that fraud is not shown by the record; second, that this issue is not made by the pleadings; and, third, that this being an action at law, and not a suit in equity, the court may not properly invoke and apply this rule.

An examination of the record sustains the finding of fact of the court of appeals, discussed at length in the opinion, that $1,804 of the principal of the judgment recovered is for a fund arising out of a collusive manipulation and representation of the respective interests of these parties in certain fire insurance on property in which they were together interested, resulting in the payment of this excess sum of insurance. The object of this suit is to determine between these parties the right to this fund so created, with respect to which they have fallen out between themselves.

It is too well settled for dispute that in such a situation a court of equity will refuse relief and repel the parties on its own motion under the doctrine of unclean hands. We see no reason why a court of law, in the administration of justice, may not exercise its inherent jurisdiction to keep its fountains clear of fraud. The maxim quoted, supra, is a legal maxim, as is another also applicable, *"In pari delicto patior est conditio pos-*

*sidentis,''* when each party is equally at fault, the law favors him who is actually in possession; that is, the parties will be left where they are. The rule that "an action cannot be maintained which is founded in fraud, or which springs *'ex turpi causa,'* " is a rule of law, whose application is not restricted to proceedings in equity. *"No* court will 'allow itself to be made the instrument of enforcing obligations alleged to arise out of a contract *or transaction* which is illegal.' " (Italics ours.) See "Broom's Legal Maxims," 562, 569, from which we quote, for a discussion of these maxims.

In Street's Foundations of Legal Liability, at page 163, it is said that: "There has been no period since contract law reached the stage of consciousness, when the maxim, *'Ex turpi causa non oritur actio,'* was not recognized."

This learned author quotes from Lord Chief Justice WILMOT this emphatic language: "By the common-law, by the civil law, moral law, and all laws whatsoever . . . you shall not stipulate for iniquity. . . . No polluted hand shall touch the pure foundations of justice."

See *Collins* v. *Blantern,* 2 Wills., 341, 1 Smith, L. C., 715. And, as particularly applicable to the suggested restriction of the rule to courts of equity, WILMOT, C. J., in this case said: "The manner of the transaction was to gild over and conceal the truth; and whenever courts of law see such attempts . . . they will brush away the cobweb varnish and show the transactions in their true light."

Illustrating the application by a court of law of the rule that a right of action cannot arise out of fraud, Mr.

Broom cites the English case of *Fivaz* v. *Nicholls*, 2 C. B., 501, wherein—"it was held that the action would not lie, inasmuch as it sprung out of an illegal transaction, in which both plaintiff and defendant had been engaged, and of which proof was essential in order to establish the plaintiff's claim as stated upon the record."

So, in the instant case, it is essential to his recovery that the plaintiff make proof of the origin or creation of the fund in dispute, from which proof it appears that the subject-matter "sprung out of" a collusive and therefore fraudulent transaction. In cases cited by the court of appeals, this court has recognized and applied this principle. In *Thornburg* v. *Harris*, 3 Cold., 172, on appeal from a judgment on a note in the circuit court, it was said: "If the contracts were made in violation of positive rules of law, it is the duty of the courts to repel the parties, and refuse its aid. The maxim, '*Ex turpi causa non oritur actio*,' is a principle of the common law, and has been acted upon from the earliest period of English jurisprudence. . . . It is against sound policy for the courts of the country to lend their active aid to enforce such contracts; no principle of the law is more clearly settled in the English and American jurisprudence. The common law prohibits everything that is unjust, illegal, or '*contra bonis mores*.' The object is to suppress vice, and promote the general welfare of society. The principle of public policy is this: '*Ex dolo malo non oritur actio*.' No court will lend its aid to enforce a contract, while it is founded on an immoral or illegal act. Chitty on Con., 657; *Dedham Bank* v. *Chickering*, 4 Pick. (Mass), 314; *Springfield Bank* v. *Merrick*, 14 Mass., 322; *Hunt* v. *Knickerbacker*, 5 Johns. (N. Y.), 327; *Hale* v. *Hender-*

*son,* 4 Humph., 199, 132, 259; *Pulse* v. *State,* 5 Humph., 108.; *McDaniel* v. *Douglas,* 6 Humph., 227; *McKisick* v. *McKisick,* 1 Meigs, 431; *Russell* v. *Pyland,* 2 Humph., 131; *Parks* v. *McKamy,* 3 Head., 297, 319, 723.''

While *Naff* v. *Crawford,* 1 Heisk., 116; *Stewart* v. *Lathop Co.,* 95 Tenn., 500, 32 S. W., 464, and *Bank* v. *Burke,* 135 Tenn., 20, 185 S. W., 704, Ann. Cas., 1918C, 439, were all suits brought in our chancery court, they were actions at law, rather than ''in equity,'' and the principle approved and applied is the same. And to the same effect are the holdings of the Arkansas supreme court, where this transaction originated. *Security Mut. Ins. Co.* v. *Little et al.,* 119 Ark., 498, 178 S. W., 418, L. R. A. 1917A, 475; *Neece* v. *Joseph,* 95 Ark., 552, 129 S. W., 797, 30 L. R. A. (N. S.); 278, Ann. Cas., 1912A, 655.

It is earnestly objected that this issue should not have been considered by the court of appeals, because it was not covered by the motion for a new trial or the assignment of errors. The rules of that court reserve to the court the option to notice errors overlooked by counsel; and, too, it is 'well settled that—''The courts will deny any relief upon any illegal contract or transaction, whenever the illegality is made to appear, whether in the pleadings or proof, and will repel the party guilty of the illegality from the court whenever the fact appears.'' *Lumber Co.* v. *Thomas,* 92 Tenn., 594, 22 S. W., 745.

To the extent, therefore, that the demand upon which this judgment rested was thus tainted, we concur in the conclusion reached by the court of appeals. However, it appears that $600 of the judgment was based upon a claim arising under a mortgage on certain mules, and, as to this much of the judgment, it becomes necessary to consider

the insistence that plaintiff cannot recover because it was a corporate nonresident of Arkansas, doing business in that State without having complied with its laws requiring the filing of its charter. It appears that defendant was a lumber dealer in Arkansas and that plaintiff, a Missouri corporation with headquarters in St. Louis, contracted to buy a quantity of lumber from defendant to be placed on sticks in defendant's yard and delivered f. o. b. cars, as and when ordered by plaintiff. As sawed and placed on sticks plaintiff made advancements on the lumber and insurance was taken for its benefit. The contract between the parties was in writing. It was prepared by a traveling representative of plaintiff and presented to and signed by defendant at his place of business in Arkansas and thereupon transmitted to St. Louis for signing there by plaintiff.

Conceding that, in a sense, this was a doing of business by the plaintiff in Arkansas, it appears to have been an interstate transaction, and on this ground, free from the charge of illegality. This is a distinction sometimes overlooked. While accepting the decision of the State courts as to what constitutes the doing of business in the State, the United States supreme court reserves to itself the right to determine what constitutes interstate commerce. *Kansas City Structural Steel Co.* v. *State of Arkansas,* 46 S. Ct., 59, 70 L. Ed., — (decided October, 1925, not yet [officially] reported). That case distinguishes, citing *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S., 282, 42 S. Ct., 106, 66 L. Ed., 239, between a contract which calls for performance by a foreign corporation of essential features thereof within the local State, apart from any element of interstate commerce

that might be involved, and a contract which calls for transactions within the local State only as incidental to and in contemplation of interstate commerce. See note 10, citing many authorities, 14a C. J., p. 1287.

The line of cases relied on by learned counsel for Reaves, such as *Browning* v. *Waycross*, 233 U. S., 23, 34 S. Ct., 578, 58 L. Ed., 828, and *Hogan* v. *Intertype Corp.*, 136 Ark., 52, 206 S. W., 58, come within the first class; that is, the contracts required agents of the selling foreign corporation to put up the lightning rods, in the one case, and to set up and demonstrate the machine, in the other, in the State wherein the sale was made. So in *Kansas City Structural Steel Co.* v. *State*, 161 Ark., 483, 256 S. W., 845, affirmed supra by the supreme court of the United States, certain bridge work in Arkansas was called for by the contract made. In the case before us, it was the Arkansas party to the contract of sale of this lumber who was required to perform the duty of manufacturing the lumber and putting it first on sticks, and later on cars. This distinction is recognized and applied in this State. *Heating Co.* v. *McKnight*, 140 Tenn., 564, 205 S. W., 419. Performance in Arkansas of no duty was required of the foreign buyer, save payment only.

It is strongly insisted that (1) the making of a contract in the State of Arkansas constitutes a doing of business within that State, under a proper construction of its statute; and (2) that this contract was so made. Conceding, but not deciding, both of these contentions, the doing of business only is shown, which becomes inconclusive of the case before us for the reason already suggested, namely, that the business done constituted interstate commerce. It will not be denied that contracts to

buy, sell, or exchange goods to be transported among the several States are parts of interstate trade or commerce. *United States* v. *Knight Co.,* 156 U. S., 1, 13, 15 S. Ct., 249, 39 L. Ed., 325. Analyzed, the contention here rests upon the claim that the written contract contained no express recital calling for interstate shipment. It is true that in *Dahnke-Walker Co.* v. *Bondurant,* supra, otherwise fully controlling, a purpose appeared to transport the grain from State to State, but, while in the instant case the contract contained no express recital of such purpose, we think that the circumstances justify the conclusion that this was the primary contemplation. This is fairly deduced from the fact that the buyer was located and operated in an adjoining State and that the contract required delivery f. o. b. cars. When this lumber company contracted to buy this lumber and provided for delivery on board cars, without more, it is reasonable to assume that shipment to its place of business was within the contemplation of the parties, rather than that a violation of the laws of the State of Arkansas was intended. It results that this assignment cannot be sustained and the petition of Reaves dismissed.

The petition of Cain-Hurley Lumber Company will be granted, and the judgment of the court of appeals so modified as to grant a recovery in favor of Cain-Hurley Lumber Company in the sum of $600, and interest thereon.