[No. 3246. Sept. 10, 1929.]

DOMINGUEZ v. ROCAS.

[281 Pac. 25.]

Crampton & Darden, of Raton, for appellant.

Fred C. Stringfellow, of Raton, for appellee.

OPINION OF THE COURT

BICKLEY, C. J. This is a suit by appellee, hereinafter referred to as plaintiff, against appellant, hereinafter referred to as defendant, to recover on a promissory note.

Plaintiff was the husband of the sister of the defendant. All of the persons involved lived in Raton and

vicinity, in Colfax county. Defendant learned that his sister, wife of plaintiff, had been guilty of misconduct tending to disgrace her family, and advised plaintiff thereof. Defendant advised that violent measures be applied to his sister, which, if acted upon, would have been promotive of a breach of the peace. Plaintiff and defendant met and discussed what was best to do. Out of the conferences as defendant alleges, in several affirmative defenses substantially alike that the consideration or a part thereof for the note sued on, was a promise on the part of plaintiff to take his (plaintiff's) wife, back to their native country of Greece, and that plaintiff

"Failed, omitted, and refused to remove to, and take his said wife with him to reside in Greece, but on the contrary has continuously since said contract and agreement, continued to reside with his wife in the states of New Mexico and Colorado; that the plaintiff has breached the contract and agreement of which said promissory note formed a part and parcel, in that he has wholly failed, omitted and refused since the date of said contract and agreement, and now fails, omits, and refuses to remove to, and take with him his said wife to Greece to reside."

Plaintiff entered a general denial to each of the affirmative defenses.

The plaintiff testified that the consideration for the note was the transfer of his interest in certain property to the defendant; denied that he promised to take his wife to Greece, but that he was willing to leave Raton in Colfax county, and go to any other place in America on account of the disagreeable talk about his wife; that he had left Colfax county and resided in other portions of New Mexico and in Colorado.

The court upon concededly substantial evidence, and at the request of the appellant, found;

"That the consideration for said note is as follows:

"(a) An agreement by the plaintiff to remove his wife from Colfax County, New Mexico, and to keep said wife out of said County in the future.

"(b) The sale by the plaintiff to the defendant of the following described property (1) An undivided half interest in a certain shoe-shine parlor in Raton, New Mexico, (2) the fixtures and equipment of a certain pool hall in Raton, New Mexico, (3) an undivided half interest in certain hotel in Raton, New Mexico."

The defendant objected to the conclusion of law made by the court to the effect that the plaintiff is entitled to judgment as prayed for in his complaint, for the reason that a part of the consideration for. the note, being an agreement on the part of plaintiff to remove and keep plaintiff's wife out of Colfax county, N. M., and that such an agreement being illegal and against public policy, and it being impossible for the court to segregate the illegal and legal part of the contract sued on, and therefore the conclusion should be. to the effect that the defendant should have judgment.

Counsel are agreed that the public policy of a state of which the courts will take notice, and to which they give effect, must be determined from its Constitution, laws, and judicial decisions.

It is clear that contracts contrary to public policy cannot be enforced, but the difficulty arises in determining whether a given contract comes within the rule. Each case therefore must be determined from its own particular facts.

It is appellant's construction of the agreement that plaintiff promised to do something which would be an infringement of his wife's personal right of liberty of power of locomotion, or changing situation, or of removing to what- ever place her inclination might direct, without any restraint by due process of law. If we assume that this construction brings the case under a recognized head of illegality on grounds of public policy, we are then required to construe the agreement reflected by the finding in the light given by the pleadings and the evidence and statement of counsel.

We approach this task with a regard for the cautionary statements made in Ingalls v. Perkins, 33 N. M. 269, 263 P. 761, 762, where we said:

"The texts disclose many kinds of attempted contract which, in their tendency, are so inimical to the public interest that courts have refused to enforce or recognize them. Yet it is not every possibility of abuse or corruption that will justify it."

Certain general considerations are reflected in the quotations from texts and decisions.

■■ We are not to presume that any illegal purpose was contemplated by the parties.

"One who refuses to perform a contract because it is illegal must carry the burden of showing such illegality; merely to create confusion and suggest doubts is not enough."

Ill. Surety Co. v. O'Brien (C. C. A.) 223 F. 933, 940 quoted in Ingalls v. Perkins, supra.

In Equitable Loan & Security Cò. v. Waring, 117 Ga. 599, 44 S. E. 320, 346, 62 L. R. A. 93, 97 Am. St. Rep. 177, it was decided:

"It is not to be presumed that people intend to violate the law, and the language of their undertakings must, if possible, be so construed as to make the obligation one which the law would recognize as valid. All ambiguities are to be resolved in favor of legality and against illegality. The contract is to be held illegal only when it will admit of no other construction."

In Bedford Belt Ry. Co. v. McDonald, 17 Ind. App. 492, 46 N. E. 1022, 60 Am. St. Rep. 172, it was decided that a contract between a railroad company and a surgeon whereby, if an employee of the company is injured, the surgeon shall be called and paid for services, is not against public policy, since it cannot be presumed that it invades the rights of the injured employee.

In Tennessee, a contract by which one party, in consideration of sums to be paid monthly, agreed to remove from the city and remain absent so long as the adverse parties maintained their residence in such city, was held not invalid, as contrary to public policy. Wallace v. McPherson, 138 Tenn. 458, 197 S. W. 565, L. R. A. 1918A, 1148.

■ In the case at bar, the circumstances were such that we cannot say it was discreditable to the plaintiff that he was desirous of maintaining the marital status. It is not surprising that he wanted to go away from the scene of his wife's alleged misconduct and deliver her from the evil influences which had beset her. There is no question of the public health or public safety involved. It cannot be reasonably held that what was agreed upon was inimical to the public welfare. So far as morality is concerned, the arrangement seems promotive of it. Being

promotive of private morals, the safety of individuals comprising a part of the public, and the peace of families, it seems a distinct gain to the public welfare. At the time of the trial, plaintiff and his wife were living together and had a child, and so far as the evidence shows, they had lived together during the two years interim between the dates of the agreement and the suit. We must judge the situation as it existed at the time of the lawsuit. There is no showing that the wife was restrained of her liberty, but, on the other hand, the evidence indicates her entire acquiescence in the arrangement and in residing with her husband in localities other than Colfax county.

Plaintiff (appellee) invokes section 2745 of the 1915 Code, which provides that the husband is the head of the family and may choose any reasonable place or mode of living, and the wife must conform thereto. Appellant answers this by saying that the agreement did not contemplate plaintiff's going away and taking his wife with him, and suggests that we presume that he intended to control his wife's whereabouts in some other manner. We think appellant is mistaken. The affirmative answers of appellant show that plaintiff's going away was a part of the plan to remove his wife, as appears from the specimen allegation quoted at the beginning of this opinion. The evidence indicates the same plan. That was the manner in which the plan was carried out. Furthermore, in the statement of appellant's counsel of what the evidence for the defendant would show, it was said that it had been agreed between the parties that in the event the plaintiff should *take* his wife to the old country, the defendant would pay him $2,000.

It is also suggested that the marital relation might cease to exist and the husband's right to choose the domicile thus come to an end, but as we construe the agreement, it was not contemplated that the appellee in such contingency would attempt to control the actions of the person who had been his wife. At least we will not presume that it did.

Appellant argues upon authority that in determining from the particular facts of each case whether the con-

tract is contrary to public policy, and therefore unenforceable, the test is, not so much the acts the parties perform or contemplated doing in order to carry out their agreement, or its actual result, but, rather, whether its tendency is evil. That is so, when we are considering a case which falls under a well-recognized head of illegality on grounds of public policy, but in a case which rests upon alleged infringement of personal rights, such as the deprivation of liberty, we have a different situation, for liberty is a comparative condition and we recognize only liberty under the law. Persons may be deprived of their liberty by law, or they may, by persuasion or otherwise, voluntarily relinquish it. So when we speak of infringement of personal liberty as an improper subject of contract, we mean infringement in an unlawful manner.

"Parties who contract will not be presumed to intend to perform their contractual obligations by doing illegal acts."

Inman Grocery Co. v. Williams, 30 Ga. App. 753, 119 S. E. 341.

Furthermore, the affirmative defenses apparently rely upon the contract and its breach to defeat defendant's obligation and plead failure and partial failure of consideration. Whether the question of illegality of the contract (apparently first suggested when the findings and conclusions were excepted to) is in the case we do not decide.

It follows that the judgment of the court below is correct and should be affirmed and the cause remanded, and it is so ordered.

WATSON and PARKER, JJ., concur.

CATRON and SIMMS, JJ., did not participate.