RUST *et al. v.* NEWBY.

(*Nashville,* December Term, 1936.)

Opinion filed January 16, 1937.

128

L. J. MONTEVERDE, of Memphis, for plaintiff in error.

SAM TAUBENBLATT, LOUIS ZIMMERMAN, and JOHN D. MARTIN, JR., all of Memphis, for defendants in error.

MR. JUSTICE COOK delivered the opinion of the Court.

Bennie Lloyd Rust and Elmer J. McCullough sued the defendant, N. J. Newby, before a justice of the peace to recover the balance alleged to be due for services. The causes were tried together in the circuit court, where a judgment of $210 was rendered in favor of plaintiff Rust and $399 in favor of the plaintiff McCullough. The judgments were affirmed by the Court of Appeals. The causes are here for review upon *certiorari*.

In conformity with practice in the circuit courts, counsel for plaintiffs stated their case. He said it was plaintiff's insistence that defendant was obligated to pay each $35 a week, but paid Rust only $21 a week and McCullough only $24.50 a week, and required them to acknowledge receipt of $35. The defense was payment as shown by the receipts.

The controversy arose and the suits were commenced by plaintiffs while the code regulating wages and hours of service under the National Recovery Act (48 Stat. 195) was in force. When that code was adopted, Newby was operating an automobile repair shop at Memphis where Rust was employed at $21 a week and McCullough

$24.50 a week. Under the code the minimum wages for such employees was $35 a week. Upon Newby's insistence that he could not continue the business and pay the wages fixed by the code, Rust and McCullough agreed to continue in his employment at the wages Newby had been paying and execute to him receipts for the wages fixed by the code so as to avoid the strictures and penalties of the National Recovery Act.

These facts appear from the testimony of plaintiffs Rust and McCullough. After Rust and McCullough had worked for some time under their arrangement with Newby, McCullough's wife was employed by Newby to keep his accounts during the temporary absence of Mrs. Newby. Mrs. McCullough, while there, discovered the deceptive practice of Newby and reported it. In that connection we quote from Mrs. McCullough's testimony:

"Q. You turned Mr. Newby in to the NRA in regard to your husband?

"A. I did. I got the papers and my husband filled them out and had a notary to sign.

"Q. You started it?

"A. Yes, sir, I started it.

"Q. Why did you start it?

"A. Because Mr. Newby wasn't giving him the right amount he was supposed to. . . .

"Q. Did you have occasion to pay your husband?

"A. Yes, sir, Mr. Newby would give me the money and he would sign receipts.

"Q. How much did the receipt call for that he signed?

"A. The receipt was for $35.00 but he was getting but $24.50."

McCullough admitted on cross-examination that he agreed to work for Newby for $3.50 a day, $24.50 a week,

and receipt for $35, and plaintiff Rust admitted that he made the same arrangement with Newby. It is made apparent by their testimony that this was done to enable Newby to evade the regulations and penalties under the National Recovery Act.

The maxim *ex dolo malo non oritur actio* must be applied, as was done in *Reaves Lumber Co.* v. *Cain-Hurley Lumber Co.,* 152 Tenn., 339, 279 S. W., 257. See, also, *Wender* v. *Lobertini,* 151 Tenn., 476, 479, 267 S. W., 367; *Wallace* v. *McPherson,* 138 Tenn., 458, 463, 197 S. W., 565, L. R. A. 1918A, 1148; *Stevenson* v. *Ewing,* 87 Tenn. (3 Pickle), 46, 9 S. W., 230; *Thornburg* v. *Harris,* 41 Tenn. (3 Cold.), 157, 172, and *Brannan* v. *Davis,* 5 Tenn. App., 72, 74.

The court should not lend aid to plaintiffs' attempts to enforce claims that by their own admission arose out of a conspiracy with Newby to evade the provisions and regulations of the National Recovery Act. It matters not that the act was subsequently declared unconstituional in *Schechter Poultry Corporation* v. *United States,* 295 U. S., 495, 55 S. Ct., 837, 79 L. Ed., 1570, 97 A. L. R., 947. Until the act was declared unconstitutional, the defendant, Newby, was subject to its regulations and penalties and the plaintiffs, McCullough and Rust, to its benefits, which by their contract with Newby they renounced, and did it to enable Newby to evade the provisions of the act.

By force of the presumption in favor of the constitutionality of statutes, the public and individuals are bound to observe a statute, though unconstitutional, until it is declared void by an authoritative tribunal. *Beaver* v. *Hall,* 142 Tenn., 416, 425, 217 S. W., 649; *Collier* v. *Montgomery County,* 103 Tenn., 705, 711, 54 S. W.,

989; *Speck* v. *State,* 66 Tenn. (7 Baxt.), 46, 51.  Nor does it matter that defendant joined with plaintiffs to evade the statute and further the conspiracy ,as revealed by plaintiffs' testimony.

■ As said in Broom's Legal Maxims (2 Ed.), 468: "If, from the plaintiff's own stating or otherwise the cause of action appear to rise *ex turpi causi* or the transgression of a positive law of this country, then the courts say he has no right to be assisted.  It is upon that ground the courts go, not for sake of the defendant, but because they will not lend their aid to such plaintiff." For elucidation of the rule, see 13 C. J., 492, sec. 444.

■ The Court of Appeals refused to apply the rule because the question was not raised in the trial court. Without reference to when the question is made, if it appears during the progress of the cause that the claim sought to be enforced rests upon a conspiracy to evade a statute, the court should refuse to lend its aid, for it is generally held that no court will enforce an alleged right *contra bonos mores*.  The refusal of the courts to do so rests upon principles of public policy.  *Reaves Lumber Co.* v. *Cain-Hurley Lumber Co.,* 152 Tenn., 339, 344, 279 S. W., 257.

Reversed and dismissed.