WHITLEY *v.* WHITE.

(*Knoxville*, September Term, 1939.)

Opinion filed May 18, 1940.

CHAS. C. MOORE, of Chattanooga, and TALMADGE, FRASER & CAMP, of Atlanta, Ga., for complainant.

SHEPHERD, CURRY & LEVINE and JERE T. TIPTON, all of Chattanooga, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Whitley sued to recover from White $20,452.39, which Whitley claimed as his share of commissions on sales made by Whitley and White of asphaltic limestone for the Alabama Asphaltic Limestone Company, under an agreement by which White was to receive 50c and Whitley $1 per ton on all such of this paving material as they might sell for use on Georgia Highway projects. It was alleged that some 27,452 tons had been sold, and that the Alabama Company had paid over to White the entire commission of $1.50 per ton; that White admitted having thus received Whitley's share, a total of $27,452.39, but had paid over to Whitley only $7,000 of this sum and, although confessing the indebtedness and promising to pay, had failed to do so. An attachment was sought of property in which it was alleged White had invested these funds, on the theory of a constructive trust.

The defense interposed by White was that the agreement contemplated an improper use by Whitley of personal and political influence on public officials which was against public policy, illegal and non-enforcible. He also charged Whitley with corruption in his dealings with the Georgia officials; and he invoked the doctrine of unclean hands.

Proof was taken and the chancellor gave judgment for the sum sued for, holding that, ''The preponderance or greater weight of the testimony is to the effect that no undue influence was exerted by Whitley or contemplated in the contract.''

The Court of Appeals reversed, holding that the suit was one to recover on a contract with White, not on one with the Alabama Company, as found by the chancellor, which was "illegal and void as subversive of a sound public policy, because the contract contemplated the exercise by complainant of personal and political pressure and influence upon the Highway Commissioners of the State of Georgia," and would not, therefore, be enforced by the courts. *Certiorari* has been granted and argument heard.

In the early part of 1935, defendant White was a salesman on commission for Alabama Asphaltic Limestone Company, and at the same time for other concerns, with headquarters in Tennessee. He had not been successful in his efforts to sell the Alabama Company's paving material for use on Georgia highways, and says he came to the conclusion that he needed help from some source having personal and political influence with the State Highway authorities. He and complainant Whitley were old friends and, knowing of his close association with these public officials, he approached him. As the chancellor states, "by appointment they met with Mr. Conzelman, the Vice President of the Alabama Asphaltic Limestone Company, in Atlanta, and also in La Grange, Georgia, and Whitley and White agreed to undertake the sale of the products of the Alabama Company to the contractors in Georgia on a commission of $1.50 per ton, making the sale price of the product $6.75 per ton;" and, that, "under this contract White was to receive a commission of 50 cents per ton and Whitley was to receive $1.00 per ton." White testified that his usual commission on such sales was from 40 to 50 cents per ton. According to Mr. Conzelman, and about this Whitley and White agree, Whitley suggested to Conzelman that he

not be named or known in connection with the matter because he was himself a road contractor, and this would prejudice other contractors. In pursuance of this arrangement, Mr. Conzelman, for the Alabama Company, addressed a letter, dated April 1, 1935, to Mr. George White, confirming the terms of the agreement, setting out details as to the materials, provisions for approval by the company of all sales, and for extensions and renewals of the contract, none, of which are material to this controversy; but omitting, in accordance with the stipulation for concealment of Whitley's interest, any mention of him as one of the agent-partners.

Whitley's agreed part in the matter, as already indicated, was the procuring of the approval by the State authorities of this particular paving material for use on some of the Georgia highways, with the stipulation that he was not to be known as a representative of the company. The specific corruptive manipulation charged to Whitley by White is that he procured the insertion in the specifications of material for certain State highways of provisions which had the effect of giving to the Alabama Company's product a virtual monopoly, or exclusive sales rights, and that he did this by the use of money, or other improper influences. This is a sharply controverted issue of fact. Whitley denies any part in bringing about the insertion of these specifications, and he is supported by the members of the Highway Commission. Whitley was a friend of these Commissioners and of the Governor and a member of the gubernatorial staff. He says that all he did in the premises was to recommend to the State authorities the adoption and use of this material which he was advised was of excellent quality.

The Court of Appeals finds, as before indicated, that (1) the complainant's claim rests on a contract between

White and himself, and that (2) this contract contemplated the exercise by Whitley of "subversive" and "ulterior" influences on public officials and was, therefore, against public policy.

The chancellor had found (1) that the claim was for money paid to White for Whitley, as his part of commissions on sales made pursuant to an agreement between the Alabama Company and White and Whitley, and (2) that the evidence preponderates against the contention that Whitley exerted improper "ulterior" influences on the State officials.

■ There can be no doubt that the general rule of law is as stated by the Court of Appeals, and set forth in the various authorities cited by that court and on the briefs, that, to quote from this court's opinion in *Osborne* v. *Allen,* 143 Tenn., 343, 352, 226 S. W. 221, 224, "Mr. Pomeroy says (section 935): 'Contracts made for the purpose of unduly controlling or affecting official conduct of the exercise of legislative, administrative and judicial functions, are plainly opposed to public policy. They strike at the very foundations of government and intend to destroy that confidence in the integrity and discretion of public action which is essential to the preservation of civilized society. The principle is universal and is applied without any reference to the mere outward form and purpose of the alleged transaction.' " And see Am. Jur., Volume 12, sections 167, 202, 206, where the general rule is well stated and many cases cited. The problem in the instant case is one of application.

■■ In the view we take we find it unnecessary to dtermine to what extent, if at all, Whitley in fact used, or as engaged to use, improper or corrupting influences. Nor is it determinatively important to decide whether Whitley's contract was one with White, as contended for

White, or with the Alabama Company, as a "joint venture." This much, at least, is clear: Whitley was engaged, whether by White or by the Alabama Company, because of his personal and political associations with the public officials in charge, and he was expected to use and did use the entree which these associations and connections gave him to induce or persuade them to adopt and use the products which he was secretly financially interested in selling to them. Now, conceding that one may legally contract to use his personal associations and influence to induce purchases of goods or materials by public officials, if no corrupting considerations are employed; and conceding further that Whitley is not proven to have used corrupt means, this court has aligned itself with those authorities which hold that purposeful secrecy of financial interest on the part of an agent engaged in inducing action by public officials, legislative or administrative, is of itself, without more, an insidiously vicious element which draws the engagement into conflict with sound public policy and defeats any recovery in the courts thereon. This rule, and the distinction between the legitimate and illegitimate, is brought out clearly in the opinion of this court in *Stansell* v. *Roach,* 147 Tenn., 183, 246 S. W., 520, 524, 29 A. L. R., 143. The Court of Civil Appeals had denied recovery to Stansell of an agreed percentage of a congressional appropriation to re-imburse a group of levee contractors, of whom Stansell was one, for certain losses, on the ground that the claim was for services rendered in "lobbying," under a contract for compensation on a contingent fee basis. In holding that this contingent feature did not void the agreement as against public policy and that one may lawfully approach and appeal, in person or through agents, to public officials, legislative, or executive, if done

openly and fairly, this court in that case emphasized as a determinative distinction that secrecy was neither contemplated, contracted for, nor practiced by Stansell in the efforts he put forth to induce favorable action by Congress. The court recognized and affirmed the destructive vice of this element of secrecy. This apt language was quoted from *Marshall* v. *Baltimore & O. R. R. Co.*, 16 How., 314, 14 L. Ed., 953; ''Secrecy, as to the character under which the agent or solicitor acts tends to deception, and is immoral and fraudulent; and where an agent contracts to use secret influences, or voluntarily, without contract with his principal, uses such means, he cannot have the assistance of a court to recover compensation.''

This court then commented and further quoted, as follows:

''The opinion of the court in that case concedes that persons whose interests may be affected . . . have an undoubted right to urge their claims and arguments, either in person or by counsel by the Legislature itself, as well as in courts [or, as here, before administrative officers], and it was said:

'' 'But where persons act as counsel, agent, or in any representative capacity, it is due to those before whom they plead . . . that they should honestly appear in their true characters, so that their arguments and representations, openly and candidly made, may receive their just weight and consideration. A hired advocate or agent, assuming to act in a different character, is practicing deceit on the Legislature. Advice or information flowing from the unbiased judgment of disinterested persons, will naturally be received with more confidence and less scrupulously examined than where the recommendations are known to be the result of pecuniary interest, or

the arguments prompted and pressed by hope of a large contingent reward, and the agent "stimulated to active partisanship by the strong lure of high profit." Any attempts to deceive persons intrusted with the high functions of legislation, by secret combinations, or to create or bring into operation undue influences of any kind, have all the injurious effects of a direct fraud on the public.'"

The views thus approved and expressed by this court in *Stansell* v. *Roach, supra,* are now re-affirmed. Are they not applicable and, indeed, controlling here?

It has been clearly shown that the agreement herein for Whitley's services, whether with White only, or with the Alabama Company, contemplated and stipulated for secrecy as to Whitley's representation and financial interest, and that this stipulation was strictly observed. This being so, under the foregoing authorities, no suit can be maintained to enforce directly such agreement; or to collect any claim the establishment of which requires enforcement or recognition by the court of such agreement.

It is strongly insisted for complainant that Whitley's engagement was jointly made between White and himself, on the one hand, and the Alabama Company, on the other, for a stipulated division of a total commission, to be paid by the company; that the transaction was handled in the name of White exclusively for the reason heretofore mentioned, by mutual and general understanding between the three parties interested, and that, pursuant to this understanding, the sums due and owing to Whitley were paid over to White and received by him for the use and benefit of Whitley; and it is plausibly argued that a recovery from White of this fund, confessedly received and held by him for the benefit of Whitley, involves no enforcement, or recognition, or approval of the con-

tract of White and Whitley with the Alabama Company to sell its product, or of any collusive, corruptive or otherwise improper conduct of the parties, if such be shown.

We are inclined to concur with counsel that Whitley's agreement was with the Alabama Company, to act as its undisclosed representative, along with White, in the sale of its products in Georgia. That company was to be and was the beneficiary of his efforts, and from it was to come and was paid to White for him his compensation. The circumstance that the confirmatory letter of April 1st was addressed to White only, rather than to White and Whitley jointly, is fully explained, and was in conformity to the agreement that Whitley's name and representation was to be kept secret. The agreement with Whitley, according to Mr. Conzelman, was definitely arrived at in his conferences with Whitley and White, by which Whitley undertook to get the Alabama Company's material approved and specified in Georgia and was to be paid $1 per ton therefor, White to receive 50c per ton, his usual commission, for his services in bringing about, or closing sales to successful road contractor bidders. Other circumstances sustain this view, among them the manner of the making of White's income tax return, which clearly indicated that he was holding this fund as Whitley's, as distinguished from a mere debtor and creditor relationship, which would have resulted if Whitley had been merely his employee or agent.

But if this be granted, can Whitley recover from White on the theory that no enforcement of the allegedly illegal agreement is called for, that the right to recover from White is not dependent thereon, that he holds this fund as a partner, or trustee, following a closed transaction, etc.? Or must he be repelled, and White permitted to

keep this money confessedly not his own? Such a disposition, if found necessary, would not be made in the interest of, or out of consideration for, the defendant. As said in *McMullen* v. *Hoffman*, 174 U. S., 639, at page 669, 19 S. Ct., 839, at page 851, 43 L. Ed., 1117, "It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations, and in order the better to secure the public against dishonest transactions."

The argument is pressed for defendant White that the obligation sued on arises out of the illegal agreement, and cannot be enforced without reference to it; that the rule followed by the court in *Reaves Lumber Company* v. *Cain-Hurley Lumber Co.*, 152 Tenn., 339, 279 S. W., 257, 258, should be applied here, that is, that, "No court will 'allow itself to be made the instrument of enforcing obligations alleged to arise out of a contract or transaction which is illegal;' " thus expressed in similar language by the Supreme Court of the United States in *McMullen* v. *Hoffman, supra*: "The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. . . . nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is, *'Potier est conditio defendentis.'* "

We have heretofore found that the evidence indicates that the contract under which complainant Whitley did his work with the Georgia authorities was entered into between Whitley and White and the Alabama Company, they to act jointly as the representatives of that company on an agreed division of commissions basis. But, we have also found that this contract contemplated

the exercise of personal and political influence by Whit-
ley upon these public officials, with an express stipulation
for concealment of Whitley's substantial financial inter-
est in the sales he was engaged to promote, and we have
seen that this element of secrecy rendered the agreement
illegal as against public policy. Now is it possible to dis-
associate this suit, brought by one of the guilty parties
to this contract, this "joint venture," to recover from
another of the three contracting parties a portion of the
gains arising out of its performance, from the illegal
contract? Can it be denied that the obligations hereby
sought to be enforced "arise out of," are "rights directly
springing from such contract?" The terms arising from
and springing out of connote source, relate back to and
tie up with origin, basis, cause. The rule, then, which
binds the court requires that we examine into the origin,
the source of the fund, recovery of which is sought, to
discover if this be tainted with illegality. If the spring
is poisoned at its source, that which flows from it cannot
be pure.

It is too plain for dispute that the fund herein sued
for is the fruitage, the outcome, arises out of, springs
from this illegal agreement entered into between Whit-
ly, White and Conzelman, for the company. It is argued
that the illegal contract had been fully performed and the
fund had been paid by the Alabama Company to White,
as in trust for Whitley. This was but a delivery by the
principal to one of its two joint agents, in part perform-
ance of that very particular of the agreement which called
for concealment, the very particular which the law con-
demns. Can the partial execution of this condemned
detail, by the payment to White of the proceeds of the ille-
gal agreement, be invoked to save the right of recovery
from the rule which closes the courts to the suitor? The

proceeds of this illegal contract are directly in the process of delivery from one of the parties thereto to another of the parties. The arm of the court may not be employed to enforce completion of the transfer.

We find no case cited by diligent and learned counsel for complainant which is so in point as to be controlling contra. Cases cited to sustain the insistence that ''the joint venture was legal'' are inapplicable, if for no other reason because the argument they are cited to support overlooks altogether the vitiating fact that this contract expressly stipulated for secrecy. Counsel say, ''The contract between the parties here entered into . . . was a lawful contract that could be executed legally,'' citing *Puryear* v. *McGavock,* 56 Tenn. (9 Heisk.), 461, for, ''The validity of the contract depends upon its terms and conditions,'' and *Arlington Hotel Co.* v. *Ewing,* 124 Tenn., 536, 550, 138 S. W., 954, 38 L. R. A. (N. S.), 842, Ann. Cas. 1913A, 121, and *McCallum* v. *McIsaac* 159 Tenn., 655, 21 S. W. (2d) 392, to the same effect. But we have shown that this joint venture contract by its very terms contravened public policy. It was bad on its face.

But, as heretofore indicated, counsel's main insistence, earnestly presented, is that this is a suit to compel a partner to account after a closed transaction; or by a beneficiary of a trust to account for a realized and set apart fund, and involves no consideration or enforcement of the allegedly illegal past dealings. The line of authorities relied on includes *Brooks* v. *Martin,* 2 Wall., 70, 69 U. S., 70, 17 L. Ed., 732; *Planters Bank* v. *Union Bank,* 16 Wall., 483, 503, 83 U. S., 483, 503, 21 L. Ed., 473; the English case of *Tenant* v. *Elliott,* 1 Bos. & P., 2; *Armstrong* v. *American Exch. Nat. Bank,* 133 U. S., 433, 10 S. Ct., 450, 33 L. Ed., 747; *McBlair* v. *Gibbs,* 17 How., 232,

58 U. S., 232, 15 L. Ed., 132 and others. This line of cases was reviewed, distinguished, and so limited as to defeat their application to the instant case, in the later case of *McMullen* v. *Hoffman, supra.*

Counsel rely upon the Tennessee case of *Pointer* v. *Smith,* 54 Tenn. (7 Heisk.), 137, but that was where Smith as agent for Pointer had collected money for his principal and sought to resist a recovery from him by his principal on the ground that his agency appointment was illegal. This case has been cited by this court with approval, but only as holding that an agent cannot retain the funds of his principal on the alleged ground of illegality in the transaction out of which the fund arose. *Memphis & Arkansas River Packet Co.* v. *Agnew,* 132 Tenn., 265, at page 272, 177 S. W., 949, L. R. A. 1916A, 640; *Knoxville* v. *Christenberry,* 147 Tenn., 286, at page 294, 247 S. W., 98; *Henry County* v. *Standard Oil Co.,* 167 Tenn., 485, at page 487, 71 S. W. (2d) 683, 93 A. L. R., 1483. And so of *State* v. *O'Brien,* 94 Tenn. (10 Pick.), 79, 28 S. W., 311, 26 L. R. A., 252, also relied on in which an agent had received the money of his principal and undertook to defend on the ground that the business from which it arose was unlawful. Said Judge BEARD speaking for the court: ''Upon the plainest principles, having assumed to receive this money for his nonresident principal, he is concluded, both civilly and criminally, by this assumption.''

This is not a suit to recover from an agent, or to recover from a third party depository. As has been shown, we have here a case in which a party to an illegal contract is seeking the affirmative aid of a court of conscience to compel another party to this illegal contract to deliver the fruitage thereof in completion, as contemplated from the beginning, of an essential link in its execution. In addition to those already cited, see the

following authorities holding against the right of recovery in such cases: Williston on Contracts (Revised Ed., 1938), Sections 1785, 1786; 41 Harvard Law Review, 650, 651; *Mackin* v. *Shannon*, C. C., 165 F. 98; 18 Rose's Notes (Rev. Ed., 1920), 280, 282, 284; Notes in 99 Am. St. Rep., 327, 329; and 23 L. R. A. (N. S.), 478, 481.

▮ In the course of an interesting discussion of the subject in Am. Jur., Volume 12, pp. 728, 729, this well-expressed summarizing statement appears: "The distinction between the cases where a recovery can be had and the cases where a recovery cannot be had of money connected with illegal transactions is substantially this: Wherever the party seeking to recover is obliged to make out his case by showing the illegal agreement or transaction, or through the medium of the illegal agreement or transaction, or when it appears that he was privy to the original illegal agreement or transaction, then he is not entitled to recover any advance made by him in connection with that agreement or money due him as profits derived from the agreement; but when the advances have been made upon a new agreement remotely connected with the original illegal agreement or transaction, and the title or right of the party to recover is not dependent upon that agreement and his case may be proved without reference to it, he is entitled to recover."

As we have before shown, the facts of the instant case take it out of the more liberal and what appears to be now the minority rule applied in some of the older cases. However, in none of them did it plainly appear, as it does here, that to grant the decree sought would not only require that we look to the terms of the original, or basic agreement to determine the amount and other facts, but would involve enforcement of that express element of the agreement which provided for the secret handling

of this fund—the very feature which rendered the contract illegal. No case can be found to support such a decree.

Complaint is made of the suppression of an original deposition given by Whitley, but this becomes immaterial since we find nothing therein which would affect the result reached.

For the reasons stated, we find it necessary to affirm the decree of the Court of Appeals dismissing the bill.