# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 8, 2002 Session

## FELIX M. WOODS, ET AL. v. JAMES N. FARIS

**Direct Appeal from the Chancery Court for Davidson County**
**No. 00-2240-III    Ellen Hobbs Lyle, Chancellor**

---

### No. M2001-02901-COA-R3-CV - Filed September 17, 2002

---

This appeal arises from an action brought by the plaintiff/seller to enforce an agreement made as an addendum to a contract for sale of a home purporting to give a mortgage to the seller. We find that both parties acted with unclean hands. Judgment of the trial court is affirmed in part, reversed in part, and this case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in Part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Renard A. Hirsch, Sr., Nashville, Tennessee, for the appellants, Felix M. Woods and Agnes J. Woods.

A Russell Willis and William B. Hawkins, Nashville, Tennessee, for the appellee, James N. Faris.

## OPINION

Felix and Agnes Woods (Woods), the plaintiffs/sellers and James Faris (Faris), the defendant/counter-claimant/buyer, entered into a contract for sale of a home in Nashville in August of 1998. The listing price was $116,900, but the sales contract and deed of trust recited a selling price of $147,500. The transaction between the parties also included an addendum giving Woods a second mortgage on the property equal to twenty percent of the agreed upon sales price of $147,500. The addendum provided, "the parties agree that in a timely manner following closing the second mortgage will, in fact, be forgiven and the debt released." Faris secured a first mortgage of $118,000 from WMC Mortgage and executed a deed of trust note for $29,500 for the second mortgage, which was secured by a deed of trust. Woods did not release the debt after closing, nor did Faris make payment on the note. In February of 2000, Faris attempted to secure a release of the lien by Woods in order to re-sell the property. Woods signed the release, but the parties dispute whether it was delivered to Faris. The release could not be recorded, however, because it had not

been notarized. The lien thus resulted in a cloud on Faris' title to the property, preventing him from closing on the sale.

In July of 2000, Woods filed a complaint to collect the unpaid balance on the promissory note. Faris answered and counter-complained for breach of contract, intentional fraud, misrepresentation and rescission of the contract. Both parties asserted, *inter alia*, the defense of unclean hands. The trial court dismissed Woods' complaint at the conclusion of Woods' proof. The court awarded Faris a judgment for consequential damages in the amount of $21,384, representing $1,188 of interest per month from February 2000 through August of 2001, and reasonable attorney's fees and discretionary costs. The trial court rejected the defense of unclean hands, finding there was no evidence to support the defense. This appeal followed.

### *Issues Presented*

Woods presents the following issues for review by this Court:

(1) Whether the sales contract merged into the deed, deed of trust note, deed of trust and settlement sheet, thereby rendering the sales contract inoperative.

(2) Whether Faris comes into court with unclean hands with a contract that is a sham and is fraudulent as to [a] third party lender.

(3) Whether the [trial] court erred in allowing counter-plaintiff to recover when he failed to mitigate damages and declar[ed] mitigation is a burden.

(4) Whether the deed of trust note and deed of trust [were] released.

Faris raises three additional issues:

(1) Whether the trial court erred by denying Faris request for Rule 11 sanctions based upon the actions of the Woods and their attorney.

(2) Whether the trial court erred by not awarding post-judgment attorneys fees.

(3) Whether the trial court erred by ruling that Woods did not commit fraud.

### *Standard of Review*

In a nonjury trial, our standard of review is *de novo*. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect

to the trial court's legal conclusions, however, there is no presumption of correctness. ***See Bowden v. Ward***, 275 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

## Unclean Hands Defense

The doctrine of unclean hands operates to prevent parties from using a court to enforce agreements that "arise out of unconscionable, immoral or just plain 'crooked' conduct." ***Farmers & Merchants Bank v. Templeton***, 646 S.W.2d 920, 924 (Tenn. Ct. App.1982). It is well settled that a court will not enforce illegal transactions. ***Reaves Lumber Co. v. Cain-Hurley Lumber Co.***, 279 S.W. 257, 258 (Tenn. 1925). A transaction need not be punishable as a crime, however, to justify application of the unclean hands doctrine by the court. ***See McDonnell Dyer, P.L.C. v. Select-O-Hits, Inc.***, No. W2000-00044-COA-R3-CV, 2001 Tenn. App. Lexis 272, at *32 (Tenn. Ct. App. Apr. 20, 2001) (***no perm. app. filed***). When a cause of action arises from a fraudulent collusion and is designed to "gild over and conceal the truth ... [the court] will brush away the cobweb varnish and show the transaction[] in [its] true light." ***Reaves Lumber***, 279 S.W. at 258. Such fraud "baffles definition." ***Knox-Tenn Rental Co. v. Jenkins Insurance, Inc***., 755 S.W.2d 33, 40 (Tenn. 1988) (quoting ***Smith v. Harrison***, 49 Tenn. 230 (1871)). But when a cause of action arises out of a transaction that the parties know to be fraudulent or "just plain crooked," the court will not enforce their agreement or give them relief. ***Reaves Lumber***, 279 S.W. at 258.

It is clear from the evidence in the record that the listed sales price for this property was $116,900. It is also undisputed that the contract for sale recites a sales price of $147,500, that Faris obtained a first mortgage from a lender in the amount of $118,000, and that he executed a second mortgage to Woods in the amount of $29,500. The addendum agreement which the parties voluntarily and knowingly executed and which is the crux of this lawsuit provides:

> This addendum is a part of the Contract for the Sale of Real Estate dated August 11, 1998. The above parties agree and affirm that as part of the above contract, the sellers will hold a second mortgage equal to 20% of the agreed purchase price of $147,500. The above parties agree that in a timely manner, following closing this second mortgage will in fact, be forgiven and the debt released.

Woods contends, in essence, that this addendum is without effect because the contract for sale merged into the deed and the settlement sheet and warranty deed recite a sales price of $147,500. Woods argues that the deed became the contract of the parties and that there is no mention of any agreement to release the note or deed of trust in the closing documents. Woods further contends that the inflated sales price allowed Faris to get 100% financing from the third party lender.

Faris contends that the actual agreed upon sales price was $116,900. He submits that the contract price was inflated because he could obtain financing of only 80% and thus the inflated price permitted him to obtain financing of $118,000 and provide the Woods with cash at closing. He argues that Woods breached the sales contract by refusing to release the second mortgage subsequent to the closing.

In sum, it is clear to this Court that the parties agreed to a sales price of $116,900 and then intentionally inflated the price in the sales contract to represent a selling price of $147,500. The parties agreed in the addendum that the sellers would hold a second mortgage equal to twenty percent of the inflated sales price of $147,500 which, following closing, was to be forgiven and the deed of trust securing the same released. Faris signed an affidavit of consideration on the face of the deed, under oath, that the value of the property or actual consideration, whichever was greater, was $147,500. By inflating the sales price, Faris was able to obtain 100% financing from the lender and Woods was able sell the property.[1] Regardless of which party benefitted more or who initiated the transaction, the parties jointly conspired to misrepresent the value of this property. In short, the parties agreed to one price and then "cooked the books" to reflect another. It is irrefutably this conspiracy between the parties that gave rise to the present action.

This transaction offends the sensibilities of this Court. We respectfully disagree with the trial court's conclusion that the evidence did not support a finding of unclean hands. We find that both parties came into court with unclean hands. We accordingly hold that this transaction is untenable. In light of the foregoing, we affirm the trial court's order that Woods shall execute a release of the second mortgage. Judgment for Faris is reversed, including amounts awarded for attorney's fees and discretionary costs. We affirm the trial court's denial of Faris' request for Rule 11 sanctions against Woods. Other issues are pretermitted as non-dispositive in this case.

This cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are divided equally, one-half to the Appellee, James N. Faris, and one-half to the Appellants, Felix M. and Agnes J. Woods, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[1] We do not agree with Woods assertion that this transaction perpetrated a fraud against the lender. It is undisputed that the lender had notice that this addendum had been executed prior to closing.