## WESLEY SPECK *v.* THE STATE.

1. CRIMINAL LAW.    *Venue.*    The Constitution guarantees a trial by an
   impartial jury of the county in which the crime shall have been com-
   mitted.
2. NEW COUNTY LINE WITHIN ELEVEN MILES OF OLD COUNTY SEAT.    The
   Constitution of 1870 authorized the Legislature to establish new coun-
   ties, but provides that "no line of such county shall approach the
   court house of any old county from which it may be taken nearer
   than eleven miles."    The act of 1871, establishing Moore county, is
   not upon its face in conflict with that provision.
       The Circuit Judge charged the jury:    "If you should believe from
   the evidence that pursuant to the act of assembly establishing the
   county of Moore, the commissioners under said act proceeded to run
   and mark and establish the West boundary line of Moore county, be-
   tween Lincoln and Moore, and run and established said line previous
   to the killing, and this line included the place of the killing in Moore
   county, and after this, and before the killing and since the killing,
   down to the this time Moore county has exercised jurisdiction over
   the territory so included within such lines, by collecting taxes, etc.,
   the offense is properly triable in Moore county, and this although
   such line, so run and established, or the place of killing, was nearer
   than eleven miles to the court house of Lincoln county."    *Held,* there
   is no error in this charge.

Speck *v.* The State.

Where the act establishing a new county is constitutional upon its face, but the commissioners in laying out the county violate the Constitution by running one of the lines nearer than eleven miles to the court house of the old county, and this line is acquiesced in by the old county, the objection cannot be taken in a collateral proceeding by a defendant who has been indicted in the new county.

Cases cited: Ford *v.* Farmer, 9 Hum., 160; Armstrong *v.* State, 1 Col., 338; Kirk *v.* State, 1 Col., 344.

Code cited: Secs. 4976, 5195.

3. CONSTITUTION. The territory embraced within the lines of the new county belongs to the new county within the meaning of the above provision of the Constitution until the old county, in some proper proceeding asserts its right to have the line changed.

FROM MOORE.

Appeal from the Circuit Court at Lynchburg.

No briefs can be found.

NICHOLSON, C. J., delivered the opinion of the court.

Wesley Speck was indicted in the Circuit Court of Moore county for the murder of John Jean, and found guilty of murder in the second degree and sentenced to twenty years confinement in the penitentiary. He has appealed to this court.

The question on which a reversal is asked for arises on the following facts:

The homicide is shown to have been committed within the boundaries of Moore county, as organized and established under the act passed December 14, 1871, for the establishment of that county. But proof was made to show that the killing took place at a still house which is less than eleven miles from

the county seat of Lincoln county, from which that portion of Moore county was taken, and it is insisted that although the killing took place in Moore county, as organized, yet that the place is really in Lincoln county, because of the unconstitutional running of the West boundary line of Moore county.

The Circuit Judge charged the jury as follows:

"If you should believe from the evidence that, pursuant to the act of assembly establishing the county of Moore, the commissioners under said act proceeded to run, mark and establish the West boundary line of Moore county, between Lincoln and Moore, and run and established said line previous to the killing, and this line included the place of the killing in Moore county, and after this and before the killing and since the killing, and down to the present time, Moore county had exercised jurisdiction over the territory so included within such lines by collecting the taxes, etc., etc.; under such a state of facts, if they exist, the court is of opinion, and so instructs you, that so far as this question can arise in this case, the offense is properly triable in Moore county, as under such a state of facts it is exercising jurisdiction over such territory; and this would be so although such line, so run and established, or the place of killing, was nearer than eleven miles to the court house of Lincoln county," etc.

It is not denied that Moore county has been organized as a county, and as such is exercising jurisdiction over the territory embraced within its boundaries as organized, and that the killing took

place in the county so organized. But it is insisted that the court erred in instructing the jury that under such a state of facts the offense was triable in Moore county.

The Constitution guarantees to the accused in all criminal prosecutions, "a speedy public trial by an impartial jury of the county in which the crime shall have been committed."

The defendant had a trial by an impartial jury of the county of Moore, in which county, as organized and established by law, the crime was committed. But it is said that the act of the Legislature, and the action of the commissioners in fixing the Western boundary of Moore county within less than eleven miles of Fayetteville, were null and void, and therefore that the place of the killing was in Lincoln county, and the trial illegally had in Moore county.

The Constitution of 1870 recognized the counties then organized as part of the political organization of the State, and provided that new counties may be established by the Legislature, but ordained that "no line of such county shall approach the court house of any old county from which it may be taken nearer than eleven miles," etc.

The power to establish new counties is thus expressly conferred on the Legislature, but in exercising this power there is an express prohibition against establishing any line of such new county nearer than eleven miles of the court house of the old county. The old county has a vested right in its territory to

the extent of eleven miles from its court house, which is secured from legislative infringment by this express prohibition.

The county of Moore was established in 1871 under this provision of the Constitution. It was made up of fractions of the territory of Lincoln, Franklin, Coffee and Bedford counties, and its boundaries specifically set out in the act, but the commissioners appointed to organize the county were empowered "to make any change in the lines of the county, if found necessary, so as to conform with the requirements of the Constitution of the State.

The commissioners were to have an actual survey of the county made, and an enumeration of the qualified voters in its limits, and also to ascertain by actual survey whether any old county will be reduced below five hundred miles.

Upon the face of the act there is nothing from which it could be inferred that the constitutional requirements were violated. On the contrary, every reasonable precaution was taken to avoid every infraction of those requirements, and hence the legal presumption is that the act is constitutional. The county was organized under this act of the Legislature, and thus established as one of the counties of the State, and as such was claiming and exercising jurisdiction over its territory before and at the time the killing took place, and down to the trial.

Upon this state of facts we are bound to hold, that when the commissioners executed the powers conferred on them, and the county was organized in pur-

suance of the statute, the county was established and became a political corporation of the State, and neither a court of chancery nor a court of law had power to inquire into the validity of the act for its establishment. *Ford* v. *Farmer*, 9 Hum., 160.

When nothing appears on the face of an act showing its invalidity, it is to be regarded, *prima facie*, as valid. Respect for the Legislature, therefore, concurs with well established principles of law in the conclusion that such an act is not void, but voidable only; and it follows as a necessary legal inference from this position, that the ground of avoidance for unconstitutionality can be taken advantage of by those only who have a legal right to question the validity of the act, and not by strangers: Cooley's Con. Lim., 164. The cases of *Armstrong* v. *State*, 1 Col., 338, and *Kirk* v. *State*, 344, are not in conflict with these provisions. The former was an attempt to enforce sec. 4976, which was unconstitutional on its face, because it authorized the trial of a criminal in another county than that in which his crime was committed. The latter was an attempt to enforce sec. 5195, which authorizes a change of venue without the consent of the accused, and was, therefore, palpably unconstitutional. But in the case before us there is nothing in the act of assembly indicating its unconstitutionality, and if so it can be ascertained and declared only upon judicial proceedings instituted for that purpose by some party having the right to raise the question.

The question then presents itself, had the defendant a right to raise the question of the invalidity of the

act on the ground that the Western boundary line is void because established nearer than eleven miles of Fayetteville? He has the undoubted right to be tried by a jury of the county in which his crime was committed. Was he deprived of this right by a trial in Moore county? Does his right of trial in the county where his crime was committed mean anything moore than that he has a right to be tried in the county organized and established, as a political corporation of the State, in which his offense was committed? His right is that of trial in the county which has jurisdiction of the place at which he committed the offense. It is a personal right, 'which is controlled by the law fixing the boundary of the county in which his offense was committed. It is not such a vested right as authorizes him to require the court to determine whether the boundaries of the county are constitutionally established or not.

The defendant had no such vested right of trial in the territory of Lincoln county as would be violated by the act of the Legislature in cutting off a fraction thereof, in making the new county of Moore. His right of trial in the county of Moore was as perfect as it had been in Lincoln county as soon as Moore was organized and established as a political corporation. Down to that time defendant could not be deprived of his right, but after the county of Moore was vested with jurisdiction over her territory the right to inquire into the legality of the Western boundary belonged alone to the county of Lincoln. She had a vested right in all her territory, and could institute

judicial proceedings to reclaim any portion thereof illegally taken from her by running the Western boundary of Moore nearer than eleven miles to her court house. But so long as Lincoln county acquiesces in the boundary which cuts off a portion of her territory, the jurisdictional right of Moore county over the territory so cut off cannot be questioned in any collateral proceeding pending in the courts of either county.

No rule of law is better settled than that which declares every act of the Legislature, which is not palpably unconstitutional on its face, is binding as a law until its unconstitutionality is judicially determined in a proceeding instituted for that purpose, or until some proceeding is instituted to enforce the act, or to declare some right under the act affecting life, liberty or property. The courts have no power to prohibit the Legislature from the exercise of unconstitutional power in legislation; they can only refuse to carry into execution such unconstitutional legislation: 9 Hum., 160. In the case before us the State instituted a proceeding to punish defendant for a murder committed in the territory included within the county of Moore. Defendant claims that he was illegally tried and convicted, because the still house at which the killing occurred is really on the territory of Lincoln county, although included within the territory of Moore by virtue of the act of the Legislature, and the running of the West boundary line contrary to the Constitution. He insists on his right to be tried in Lincoln county, not under, but against the act of

the Legislature, and that the Circuit Judge erred in refusing to instruct the jury that the act of the Legislature and the West boundary line of Moore county were unconstitutional and void.

The answer of the State to this claim is, that the county of · Moore had been organized and established under the act of the Legislature; that this act was *prima facie* constitutional and valid, and conferred jurisdiction on the county of Moore; that after the establishment of the county, the courts have no power to inquire into the validity of the act establishing the county; that as to the legality of the West boundary line of Moore, that is a question between Moore and Lincoln counties, and until Lincoln county resorts to judicial proceedings, and has the line declared illegal and void, Moore county exercises rightful jurisdiction up to the line; that the West boundary line of Moore, although it may not have been run and established at the proper distance from Fayetteville, is not therefore void *ab initio*, but only voidable at the election of Lincoln county upon proper judicial proceedings; that the proceedings before the Circuit Court was not for the enforcement of the act of the Legislature establishing the county of Moore, nor was the defendant claiming any right of life, liberty or property under that act which the court was called on to declare, but was claiming a right in opposition to the act; and that in such a proceeding it was not competent for the court to try the question of the unconstitutionality of the West boundary line of Moore county.

These positions we hold to be well sustained upon reason and authority, and therefore are of opinion that there is no error in the charge of the Circuit Judge, and affirm the judgment.