686

STATE OF TENNESSEE

*v.*

ROBERT HOFFMAN.

362 S.W.2d 231.

(*Jackson,* April Term, 1962.)

Opinion filed November 13, 1962.

GEORGE F. McCANLESS, Attorney General, LYLE REID, Assistant Attorney General, Nashville, for the State.

MILES & MILES, Union City, for defendant.

MR. JUSTICE WHITE delivered the opinion of the Court.

The State of Tennessee and Robert Hoffman have appealed from the action of the Trial Court and, therefore, both occupy the status of plaintiff-in-error and defendant-in-error, and in this opinion they shall be referred to as they appeared in the Trial Court.

The record discloses that the defendant was arrested upon a charge of offering for sale and selling eleven head of game fish in violation of Section 51-431 T.C.A. upon a warrant procured by J. R. Hall, Agent for the Fish & Game Department of the State of Tennessee.

On February 14, 1962 upon the trial of the case in the General Sessions Court of Lake County, the defendant was found guilty and fined $50.00, from which action of the Court, the defendant appealed to the Circuit Court of Lake County at Tiptonville.

In the Circuit Court the defendant filed a sworn plea in abatement to the warrant issued against him, averring that neither the Circuit Court of Lake County nor the General Sessions Court of Lake County had jurisdiction of the case for the reason that under Section IV, Article X of the Constitution of the State of Tennessee, all of Reelfoot Lake lies in Obion County, Tennessee, and that the offense charged in the warrant, if one was committed, was committed in Obion County and the jurisdiction of the alleged offense was solely and alone in Obion County. It was further contended in said plea in abatement that Chapter 173 of the Acts of 1893 and Chapter 176 of the Acts of 1897 and any other Acts purporting to fix the boundary line between Obion County and Lake County contrary to and in conflict with Section IV, Article X of our Constitution were unconstitutional and void.

The State joined issue upon the plea in abatement. The defendant in writing waived the right of trial by jury. Without waiving his sworn plea in abatement, the defendant, Robert Hoffman, orally entered a plea of not guilty to the charge.

At the conclusion of the testimony, it having been agreed that the case would be heard both on the plea of not guilty and the plea in abatement, the Trial Court was of the opinion that since Section IV, Article X of the Constitution of Tennessee authorized the creation by the Legislature of a new County out of that portion of Obion County which lies west of the low water mark of Reelfoot Lake, which was properly done by Chapter 30 of the Private Acts of 1870; that, therefore, Chapter 173 of the Private Acts of 1893 and Chapter 176 of the Private Acts of 1897 under which the Legislature under-

took to change the boundary line then existing between Lake and Obion Counties were unconstitutional and void. To this extent the Court sustained the plea in abatement to the jurisdiction of the two lower Courts to hear this case.

However, the Circuit Judge held that notwithstanding the plea in abatement both the General Sessions Court and the Circuit Court of Lake County had jurisdiction of the subject matter of the case under Section 5-102 T.C.A.

The Court also found the defendant guilty as charged and assessed a fine against him in the amount of $50.00 together with the cost of the case.

Upon a motion for a new trial being overruled, the defendant appealed in error. From the action of the Court in holding the Acts aforesaid unconstitutional the State also appealed and assigned error.

The effect of the assignments of error filed on behalf of the plaintiff-in-error, Hoffman, defendant, is that no evidence was presented, nor could it have been that the defendant was guilty of the commission of any offense in Lake County, the county in which the defendant was tried and convicted.

It was contended by the defendant that all of Reelfoot Lake must be in Obion County, Tennessee under Section IV, Article X of the Constitution, and since the defendant was arrested, tried and convicted for the offense allegedly occurring in Lake County when, in fact in occurred in Obion County, if at all, the defendant is not and could not have been found guilty.

By Chapter 30 of the Acts of 1870 it was provided that a new county be and the same is "hereby established

out of that portion of Obion County which lies west of low water mark of Reelfoot Lake, which shall be called the County of Lake''.

By Chapter 173 of the Acts of 1893 the county line between Obion and Lake was changed so as to follow a line of survey which took from Obion County certain land and added the same to Lake County.

By Chapter 176 of the Acts of 1897 the boundary line between the said counties was again changed so as to meet the report of a commission appointed by the County Court of the Counties of Lake and Obion to survey, fix and establish the boundary line between said counties ''in accordance with the constitutional provision and legislative Act creating the county of Lake, as to that part of said boundary not already fixed by an Act of the General Assembly of 1893.''

Thereafter, and in 1925 by a Private Act, Priv.Acts 1925, c. 548, another small change was made in the boundary between the said counties but this does not bear upon the present lawsuit.

The Constitution guarantees to the accused in all criminal prosecutions ''a speedy public trial, by an impartial jury in the County in which the crime shall have been committed.''

The boundary line between the counties of Lake and Obion has been firmly established for more than sixty-five years except for a slight change by the Private Act aforesaid.

The county offices, the voting precincts, the taxing districts, the tax assessments, the tax collections, the distribution of state funds, the school districts and all

taxes and benefits in connection therewith and every other jurisdictional benefit and detriment have been enjoyed by these counties, which are subdivisions of the State, for many years without complaint by the counties in their capacity as such.

Section IV, Article X of the Constitution provides:

"New Counties may be established by the Legislature to consist of not less than two hundred and seventy-five square miles, and which shall contain a population of seven hundred qualified voters; no line of such County shall approach the Court House of any old County from which it may be taken nearer than eleven miles, nor shall such old County be reduced to less than five hundred square miles. But the following exceptions are made to the foregoing provisions viz: New Counties may be established by the present or any succeeding Legislature out of the following Territory to wit: Out of that portion of Obion County which lies west of low water mark of Reel Foot Lake".

Chapter 30, Acts of 1870 established Lake County, designating its eastern line to be the west low water mark of Reelfoot Lake as specified in the above Section of the Constitution. Chapter 173 of the Acts of 1893 provided that the boundary line between Lake and Obion Counties be changed and designated a line which was east of the original line and was located in Reelfoot Lake. Chapter 176 of the Acts of 1897 provided that the boundary line between the two counties be as therein designated, which altered slightly or made more definite the location of the line.

Upon the undisputed evidence, the defendant is guilty of selling game fish in violation of the law. He offered no proof to the contrary. He does, however, raise the questions of venue and the constitutionality of the aforesaid Acts changing the boundary line between said counties, and further that the Trial Court improperly interpreted Section 5-102 T.C.A. as affording jurisdiction of the defendant and of the subject matter of this case.

A very similar situation to the one at bar was presented to the Court in 1872 in the case of *Speck v. State,* 66 Tenn. 46. In that case the defendant was found guilty of murder and sentenced to a term in the Penitentiary.

Speck was shown to have committed the murder within the boundaries of Moore County, as organized and established under an Act passed December 14, 1871. Proof was introduced to show that the killing took place at a point less than eleven miles from the county seat of Lincoln County, from which that portion of Moore County was taken. It was insisted that, although the killing took place in Moore County, as organized and established, yet, the place of killing was really in Lincoln County, because of the unconstitutional running of the west boundary line of Moore County in violation of Article X, Section IV of the Constitution.

In the Speck case it was not denied that Moore County had been organized as a county and was exercising jurisdiction over the territory embraced within its boundaries, as organized, and that the killing took place in the county so organized.

We recognize and respect the guarantee given by the Constitution to the defendant that he shall have a trial in

"the county in which the crime shall have been committed".

In *State v. Tollett et al.,* 173 Tenn. 447, 450, 121 S.W.2d 525, 526, the Court said:

"The constitution thus guarantees the accused a trial by a jury of the county wherein the crime was committed. *Speck v. State,* 66 Tenn. 46, 7 Baxt. 46; *Alexander v. State,* 50 Tenn. 475, 481, 3 Heisk. 475, 481; *State v. Denton,* 46 Tenn. 539, 6 Cold. 539; *Kirk v. State,* 41 Tenn. 344, 1 Cold. 344; *Norris v. State,* 127 Tenn. 437, 155 S.W. 165."

The record discloses that the defendant had a trial in the county in which this misdemeanor was committed. The county lines of Lake County were organized and established by law, and they have been so organized and established for more than sixty-five years. It is claimed by the defendant herein, as was claimed by the defendant Speck, supra, that the Acts establishing the boundary line between Lake and Obion Counties are null and void and, if so declared by this Court, then the defendant was tried in the wrong county, thereby depriving him of his constitutional right to be tried in the county where the crime was committed.

The power to establish new Counties is expressly conferred upon the Legislature and not upon this Court. We are only permitted to pass upon the constitutionality of Acts of the Legislature when brought before us by proper proceedings.

As aforesaid, these counties have been established and the boundary lines between them have been drawn by the Acts of the Legislature and such counties have

been functioning as subdivisions of this State without complaint from either one of them for the period of time indicated.

In the case of *Speck v. State*, supra, 66 Tenn. page 51, the Court said:

"When nothing appears on the face of an act showing its invalidity, it is to be regarded, prima facie, as valid. Respect for the Legislature, therefore, concurs with well established principles of law in the conclusion that such an act is not void, but voidable only; and it follows as a necessary legal inference from this position, that the ground of avoidance for unconstitutionality can be taken advantage of by those only who have a legal right to question the validity of the act, and not by strangers: Cooley's Con. Lim., 164." See also *Collier v. Montgomery County*, 103 Tenn. 705, 711.

In this case does the defendant have the right to raise the question of the invalidity of the Acts aforesaid? We do not think so. He does have the right to a trial in the county in which he committed this offense, and according to the record he was tried in the county in which he was so charged. We hold, as the Court did in the Speck case, that such right is "not such a vested right as authorizes him to require the court to determine whether the boundaries of the county are constitutionally established or not". Such boundaries have been established by Acts of the Legislature, which are upon their face constitutional and valid. The Counties of Lake and Obion have long acquiesced in the boundary lines separating them and we hold that the validity of the aforesaid Acts

cannot be questioned in a collateral proceeding, as in this case.

The defendant has been charged and tried upon an offense occurring in Lake County as organized and established by the laws of this State. He has no right, superior to any other citizen, similarly situated to test the validity of the Acts establishing and organizing said County of Lake or its boundary.

"No rule of law is better settled than that which declares every act of the Legislature, which is not palpably unconstitutional on its face, is binding as a law until its unconstitutionality is judicially determined in a proceeding instituted for that purpose, or until some proceeding is instituted to enforce the act, or to declare some right under the act affecting life, liberty or property. The courts have no power to prohibit the Legislature from the exercise of unconstitutional power in legislation; they can only refuse to carry into execution such unconstitutional legislation: 9 Hum., 160." *Speck v. State,* supra, 66 Tenn. page 53. See also *State v. Hobbs,* 194 Tenn. 323, 250 S.W.2d 549 and other cases.

In the case of *Rust et al. v. Newby,* 171 Tenn. 127, 130, 100 S.W.2d 989, 990, it was held:

"By force of the presumption in favor of the constitutionality of statutes, the public and individuals are bound to observe a statute, though unconstitutional, until it is declared void by an authoritative tribunal. *Beaver v. Hall,* 142 Tenn. 416, 425, 217 S.W. 649; *Collier v. Montgomery County,* 103 Tenn. 705, 711, 54 S.W. 989; *Speck v. State,* [66 Tenn.] 7 Baxt.

46, 51. Nor does it matter that defendant joined with plaintiffs to evade the statute and further the conspiracy as revealed by plaintiffs' testimony."

The defendant has not been deprived of any of his constitutional rights. He has had a speedy and public trial, having waived the trial by a jury, by a court of competent jurisdiction of the county in which the crime (misdemeanor in this case) was committed. That is, he had a trial in the county as organized and established by law.

It is our opinion that the Trial Court was in error in holding the aforesaid Acts unconstitutional and void for the reason, inter alia, that the defendant has no standing to so question them.

Therefore, the action of the Trial Court in declaring Chapter 173 of the Acts of 1893 and Chapter 176 of the Acts of 1897 to be unconstitutional is in error. His action in sustaining the plea in abatement is overruled. All assignments of error of the defendant, Robert Hoffman, are hereby overruled. The cost of this appeal shall be borne equally by the State and by the defendant.

A decree will be entered accordingly.