RAYMOND SHIRLEY v. STATE OF TENNESSEE

(*Jackson,* April Term, 1955.)

Opinion filed June 10, 1955.

CLARKE, NORRIS & MATHERNE, of Brownsville, for plaintiff in error and petitioner.

DICK JERMAN, District Attorney General, and A. H. GRAY, Haywood County Attorney, of Brownsville, for the State and respondent.

Mr. Justice Burnett delivered the opinion of the Court.

This suit involves the question of whether or not the court will return to those engaged in an unlawful gambling game money taken from the participants of the game by the Sheriff and turned over to the County Court Clerk.

Shirley was jointly indicted with one Conlee on the charges of gaming and operating a gaming house. These parties plead guilty to the charge of gaming and their fines were fixed by a jury at $150 each and they were taxed with the costs. During the progress of the trial it appeared from the proof that when Shirley was arrested the Sheriff seized from him the sum of $1,060 and from Conlee the sum of $210 and that the Sheriff turned this money over to the Clerk of the Court. Each of these defendants petitioned the Court seeking the restoration to them of these respective sums of money. The trial court ordered Conlee's money returned to him after his fine and costs were deducted and also ordered $800 of Shirley's money less his fine and costs returned to him but held that since Shirley admitted on the stand that he had won $260 of the sum which was taken from him in this gambling transaction that this portion of the money would not be refunded to him but would be paid over by the Clerk of the Court into the Treasury of the County. It is from this denial of Shirley's petition that the present appeal comes.

The trial court in a memorandum which is a part of the record in denying Shirley the right to have this $260 (the amount that he had admittedly won in the crap game) returned to him expressly stated that this was not being refused because the money was a forfeiture but that Shirley could not invoke the aid of the court to recover this money which he admittedly had won in this crap game.

Counsel for Shirley have filed an extensive brief reviewing authorities from many States in the Union. The State has replied and cites no authority but relies upon the well settled principle that a party to a gaming contract, or any illegal contract, cannot recover profits or gains made in the carrying out of such illegal contract, or recover in any way directly upon the illegal contract. It is said that the reason for the rule is that to allow such a recovery the court would be lending its aid and sanction to such illegal contract.

Where any party seeks a recovery upon such a contract by sustaining directly thereon, or brings an action of account against the other party to the illegal contract to recover for his money and profits embarked and gained in the carrying out of such illegal contract, courts of law and equity will refuse to aid either party in such contract because they are both equally culpable and the courts will leave them where it finds them, without giving aid to either party. This principle as relied upon by the State, the one upon which the trial court based its decision, is supported by authorities from practically every jurisdiction that we can find. In this State the principle is well supported by such cases as *Cantrell* v. *Ring,* 125 Tenn. 472, 145 S. W. 166; *Shaw* v. *Carlile,* 56 Tenn. 594; *Kirk* v. *Morrow,* 53 Tenn. 445; *Cate* v. *Blair.*

46 Tenn. 639; *Walker* v. *Walker,* 44 Tenn. 300; *Henly* v. *Franklin,* 43 Tenn. 472, 91 Am. Dec. 296; *Thompson* v. *Collins,* 39 Tenn. 441; *Yerger* v. *Rains,* 23 Tenn. 259; *Hale* v. *Henderson,* 23 Tenn. 199, and *Carter* v. *Montgomery,* 2 Tenn. Ch. 216, and others.

▌ The plaintiff in error on the other hand takes the very logical position, which is supported by many authorities, that since we have no statutory law in this State which forfeits money taken in an illegal transaction or a gambling game that then since the money here taken had been appropriated by Shirley to his own use and put with his own money before it was confiscated that there could be no confiscation thereof. In support of this position the plaintiff in error relies upon our cases of *Brooks* v. *McCoy,* 192 Tenn. 586, 241 S. W. (2d) 579, and *Wells* v. *McCanless,* 184 Tenn. 293, 198 S. W. (2d) 641, wherein this Court has held in reference to automobiles taken in the transportation of whisky that in the absence of the following of the statute in allowing confiscation in these confiscation proceedings that unless these statutes were strictly followed pursuant to the law of the land that the car could not be confiscated. They also rely upon the case of *Casone* v. *State,* 176 Tenn. 279, 140 S. W. (2d) 1081 where a car with contraband liquor was confiscated by the Sheriff of Shelby County and then the owners of the car attempted to get the car and the liquor back and this Court held that there was no statutory right for the State through the Criminal Court or Law Court of Shelby County to confiscate the car and that in the absence of the Department of Finance and Taxation intervening in the matter the car should be returned to Casone and others.

· Then they rely upon cases from many jurisdictions which in effect hold that money not being ordinarily an

instrumentality of gambling but merely the profit or the stake of the game is not subject to forfeiture. The cases thus relied upon are the Pennsylvania case of *Rosen* v. *Superintendent of Police Dept.*, 120 Pa. Super. 59, 181 A. 797; *State* v. *Falgren*, 176 Minn. 346, 223 N. W. 455; *Chappell* v. *Stapleton*, 58 Ga. App. 138, 198 S. E. 109; *Miller* v. *State*, 46 Okl. 674, 149 P. 364, and others. These cases and many others are annotated in an excellent annotation on the subject, in 19 A. L. R. (2d) beginning at page 1230. Upon examination of this note and reading many of the cases it is found that the note is primarily concerned with the forfeitability of money used in connection with gambling enterprises and the annotator concludes that under such cases that the question largely depends upon the decisions which the courts have arrived at in the interpretation of the terms of the various forfeiture statutes. The reasons relied upon by the State and which the trial judge relied upon are not involved in this note. In the note we do find that when the amount of money taken formed an integral part of the illegal gambling transaction operation that then the money is not returned to the person claiming it. This holding is true in two or three Pennsylvania cases which are of comparatively recent origin and are much later than the Pennsylvania case relied upon by the plaintiff in error. *Commmonwealth* v. *Plotnick*, 1942, 48 Lanc. Law Rev., Pa., 175, Annotated at page 1237 of the A. L. R. supra. Also see *Commonwealth* v. *Friedken*, 1946, 158 Pa. Super. 357, 45 A. (2d) 403 and others.

The case of *Kearney* v. *Webb*, 278 Ill. 17, 115 N. E. 844, 3 A. L. R. 1631 is likewise relied upon by the plaintiff in error. An examination and reading of this case discloses that it is not applicable to the facts of the instant case even though some of the discussion and

statements of the court therein might be so construed. The gist of the opinion and the real kernel to the decision is this statement:

"They proved their title to the money without relying on the illegal contract in question—i. e., they made out completely under their declaration, without even a reference to the illegal contract, their prima facie case." *Kearney* v. *Webb,* supra, 115 N. E. at page 846.

As we see the matter this is the controlling principle wherein the courts have returned money in cases of the kind.

The trial judge relied upon the case of *Hofferman* v. *Simmons,* 290 N. Y. 449, 49 N. E. (2d) 523 an opinion by the Court of Appeals of New York (Court of last resort of that State) in 1943. In this case (that is the Hofferman case) the plaintiffs there sought by replevin to recover money which had been taken from them by the New York City police in gambling and policy games. The Supreme Court of New York said that there was no statute authorizing the forfeiture of money thus taken but placed their decision in denying the recovery of this money on the fact, first, that under their law, as in ours, a suit in replevin is strictly a possessory action and the plaintiff in such an action must show a possessory right which is recognized by the law. In *Duplicator Supply Co.* v. *Patterson,* 197 Tenn. 157, 270 S. W. (2d) 467, 469, it was held that the replevin is a possessory action and that to maintain such an action "the plaintiff must show that he is entitled to possession of the article and that the defendant is in possession of it and unlawfully detaining it from the plaintiff." The instant action is not a replevin action but it is a petition filed in a criminal court appealing to that court for that court to return or

order returned to the petitioner money admittedly won by the petitioner in an unlawful gambling game. In other words the trial judge herein only retained such of the money taken from the petitioner as was admittedly won in the crap game.

The New York Court in considering this question said [290 N. Y. 449, 49 N. E. (2d) 526]:

"We ask what right have the plaintiffs to demand that the courts get these monies back for them? What present title or possessory rights have they to show? * * * To say that a professional gambler, running a betting room or supervising a squad of policy collectors, can invoke the aid of the courts to get back from the police monies which have been bet with the professional gambler in defiance of the law, is to say that the courts will recognize and protect an outlawed business, and give their sanction to titles and possessory rights founded only on lawbreaking."

The Court of Appeals of New York thus concludes, in denying the gamblers a return of this money, with this statement:

"The failure of the Legislature to complete the statutory scheme as to gambling by providing for the ultimate disposition of monies seized from professional gamblers does not make lawful the possession of such monies by such persons or confer on them legal title thereto. 'However, whatever may or may not be done with the money in the custody of the court, the power of our courts, either at law or in equity, cannot be invoked in aid of one showing a violation of the law, to complete the illegal transaction and secure to the violater the fruits of his out-

lawry.' *Dorrell* v. *Clark,* 90 Mont. 585, 592, 4 P. 2d 712, 714, 79 A. L. R. 1000.''

We feel constrained, and think that it is our duty, to follow and adopt as the reasonable rule for the courts to follow in such instances this holding of the court of last resort of New York. The result is: the judgment below is affirmed.