Dan P. **FREEMAN, Plaintiff-Appellee,**

v.

**Allen C. THOMPSON, Jr. and Elizabeth B. Thompson, Defendants-Appellants.**

Court of Appeals of Tennessee,
Western Section.

Dec. 20, 1979.

Certiorari Denied by Supreme Court
Feb. 19, 1980.

Lee L. Piovarcy, Clare M. Orman, Memphis, for defendants-appellants.

Patrick Johnson, Jr., Memphis, for plaintiff-appellee.

SUMMERS, Judge.

On September 17, 1973, Dan P. Freeman, the plaintiff-appellee, filed a Complaint for Specific Performance or Money Judgment against Allen C. Thompson, Jr. and Elizabeth B. Thompson, the defendants-appellants. The case was tried before the chancellor without a jury on January 31 and February 1, 1978, and he found that the plaintiff was entitled to a money judgment in the sum of $45,019.66.

On February 2, 1978, the defendants filed a request for findings of fact and conclusions of law pursuant to Rule 52 TRCP. The chancellor's findings of fact were filed on March 27, 1978, and were incorporated in the Final Decree and Order of Judgment entered on April 3, 1978. On April 28, 1978, the defendants filed a Petition to Rehear or, in the Alternative, Motion for a New Trial. On June 12, 1978, the chancellor entered an Order Denying Petition to Rehear and Overruling Motion for a New Trial.

The defendants perfected their appeal to this court and assigned seven errors for our consideration. However, we will not address the assignments of error *seriatum*.

The plaintiff is a licensed life insurance salesman. The defendant, Allen C. Thompson, Jr., is engaged in the real estate mortgage banking business. The other defendant, Elizabeth B. Thompson, is the wife of Allen C. Thompson, Jr. The subject matter of this lawsuit was an agreement drawn by the defendants' attorney at the request of Mr. Freeman and Mr. Thompson and dated November 10, 1971. The agreement stated that it was by and between Allen C.

Thompson, Jr., and Dan P. Freeman although it was signed only by Mr. and Mrs. Thompson. It acknowledged an indebtedness to the plaintiff of $45,019.66, the first year's premium on four million dollars of life insurance on the lives of the defendants, less the cash value of the policies. The agreement also stated that Freeman "may use the above sum as a down payment only on real estate sold by the party of the first part to the party of the second part."

In August of 1970, Don W. Huey, a life insurance salesman, had a dinner party at the Rivermont in Memphis, Tennessee, for the purpose of entertaining prospective customers. At this time, the plaintiff was working with Mr. Huey in the sale of life insurance. One of the guests at this party was Mr. Thompson.

It is undisputed that it was Mr. Huey who put together a proposal for a life insurance package covering the defendants. The package provided for three million dollars in coverage on Mr. Thompson and one million dollars in coverage on Mrs. Thompson. These policies were to be issued by Phoenix Mutual Life Insurance Company.

Thompson's business required a large borrowing power. This additional life insurance coverage assured the Thompsons' estates of liquidity and was an added advantage when securing bank loans. Mr. Huey and the plaintiff knew that the Thompsons did not have the cash to pay for the first year's premiums. A scheme was worked out whereby Mr. Thompson sent his checks to Phoenix Mutual Life Insurance Company for the payment of the minimum first year premium. He was then, in turn, reimbursed for these sums by checks from the plaintiff and from Huey's attorney.

The plaintiff and Mr. Huey wanted to have the plaintiff appointed as the District Manager of Phoenix Mutual Life Insurance Company in Memphis. Due to the large amount of life insurance business generated in late 1970, the plaintiff did obtain this position with that company. He was paid an annual salary of $15,000.00 and was provided with an office and a secretary as district manager.

The plaintiff alleged that the defendants owe him $45,019.66 as the first year premium on this life insurance. Huey testified that the agreement of November 10, 1971, was entered into simply to get around the anti-rebate statute of the State of Tennessee and that there was never an intention by any of the parties that this sum of money would be paid to Freeman. Mr. Thompson testified that any property that he would have offered to the plaintiff would have been at an increased price to cover the $45,019.66 thereby assuring that Thompson would not be paying the plaintiff this sum of money.

Huey testified that it was up to him as to what part of the premiums earned on this insurance package would be given to the plaintiff. Huey received a boat from Mr. Thompson worth five or six thousand dollars, and he considered this payment in full for his part of the insurance premiums. Huey testified that the plaintiff actually received several thousand dollars of commission on this sale. The volume of 15 million in insurance written during this period by Huey and the plaintiff, including the four million written for the defendants, gave the plaintiff the added benefit of being appointed the district manager of Phoenix Mutual Life Insurance Company.

There was sharp conflict in the testimony as to the intentions of the parties in drawing up the agreement. The chancellor made findings of fact which are in part contradictory. He found that "both parties co-operated to circumvent the Tennessee Statutes which prohibit the rebate of insurance commission to the insured." The chancellor also found that the contract was not in contravention of the rebate statutes or laws of Tennessee.

Judge Nearn in the very recent case of *Hohenberg Brothers Company v. Missouri Pacific Railroad Company*, 586 S.W.2d 117 (Tenn.App.1979), discussed the scope of review of an appellate court of a nonjury case and clarified some misunderstandings which have arisen. Judge Nearn said:

This Court is a court of review, not a Trial Court. We do not *try* a case *de novo* as does a Circuit Judge on an appeal from the General Sessions Court. In a *de novo trial* the Circuit Judge does not review the action of the General Sessions Judge and is not concerned with what took place in the General Sessions Court nor the propriety of the lower Court's action; and no presumption of correctness attaches to the General Sessions judgment. The matter is *tried* as if no other trial had occurred.

The nature of a Court of review is entirely different. It is the function of a Court of review to *review* the actions of the Trial Judge. If it were not so, there would be no need to preserve a record on appeal, for the parties would just have at it all over again in this Court. Additionally, in this Court it is the appealing party who must carry the burden, no matter whether plaintiff or defendant below. . . .

As to the scope of review, counsel correctly cites to us T.C.A. 27–303 and the case of *Bankers Life & Casualty v. Jenkins* (1977 Tenn.) 547 S.W.2d 237 for the proposition that our *review* of non-jury cases is *de novo*, and that there accompanies the judgment below a presumption of correctness unless the evidence *preponderates* to the contrary. Since the case before us for review is non-jury, that legal proposition is appropriate.

. . . Under the preponderance of evidence test, the evidence is weighed by the reviewing Court on an evidentiary fact scale. Whichever side of the fact scale is heavier will be the finding of the Court. . . .

We agree with the chancellor that the parties did conspire to circumvent the Tennessee statutes prohibiting rebate of insurance commissions to insureds. However, we disagree with the chancellor's finding that the contract was not in contravention of the rebate statutes of laws of Tennessee. This court is of the opinion after close scrutiny of all of the testimony and the exhibits thereto that the preponderance of evidence is that the contract, the subject of this lawsuit, is but an extension of the scheme of the parties to circumvent T.C.A. 56–1215, which provides:

Rebates by insurance company or agent unlawful.—It shall be unlawful for any insurance company or agent to pay or allow, or offer to pay or allow, as an inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance. [Acts 1919, ch. 176, § 1; Shan.Supp., § 3312a1; Code 1932, § 6133.]

It has been held in Tennessee that the Tennessee courts cannot be used as an instrument to enforce obligations alleged to arise out of a contract or transaction which is illegal. *Easterly v. Myers*, 24 Tenn.App. 688, 148 S.W.2d 640 (1940); *Whitley v. White*, 176 Tenn. 206, 140 S.W.2d 157 (1940). We must agree with the defendants that this agreement was tainted with illegality and is part of the overall scheme to get around the anti-rebate statutes of the State of Tennessee.

As was said in *Mascari v. Raines*, 220 Tenn. 234, 415 S.W.2d 874 (1967):

"When contracts are prohibited by statute, the prohibition is sometimes expressed, and at others implied. Whenever the law imposes a penalty for making a contract, it impliedly forbids parties from making such a contract; and when a contract is prohibited, whether expressly or by implication, it is illegal, and cannot be enforced. Of this there is no doubt." *Perkins v. Watson, Trustee*, 61 Tenn. 173 (1872); *Stevenson v. Ewing*, 87 Tenn. 46, 9 S.W. 230 (1888).

In 11 Am.Jur.(2d), Bills and Notes, Section 255, Page 282, it is said:

"Like other contracts, bills and notes fall under the condemnation of agreements which are founded upon an illegal consideration or grow out of an illegal transaction, that is, a transaction which violates a constitutional provision or statutory or

common law, public policy, or good morals."

We overrule the plaintiff's motion to strike the assignments of error and appeal as we find the motion to be without merit.

Because the weight of the evidence is that the subject contract was part of the illegal scheme to get around the anti-rebate statute of the State of Tennessee, we hold that the plaintiff should not be allowed to recover against the defendants on this contract. Therefore, the decision of the chancellor finding for the plaintiff is overruled, and this court finds for the defendants. The costs in this cause are adjudged against the plaintiff.

NEARN and EWELL, JJ., concur.