Arvy K. **LEDBETTER** and Ruth Ledbetter, Plaintiffs/Appellees,

v.

Carrol **TOWNSEND** and Old Hickory Enterprises, Inc., Defendants/Appellants.

Court of Appeals of Tennessee, at Jackson.

Sept. 24, 1999.

Application for Permission to Appeal Denied by Supreme Court Dec. 20, 1999.

C. Mark Donahoe, Catherine B. Clayton, Spragins, Barnett, Cobb & Butler, PLC, Jackson, TN, for Defendants/Appellants.

Russell Rice, Jr., Law Office of Russell Rice, Jr., P.C., Jackson, TN, for Plaintiffs/Appellees.

FARMER, J.

In this action for breach of contract, the trial court ordered Defendant Carrol Townsend to specifically perform her obligations under a written agreement with Plaintiff Arvy K. Ledbetter dated April 3, 1998. Because we find that this agreement is an illegal and unenforceable contract, we reverse the ruling of the trial court.

Mr. Ledbetter is the owner and operator of a business known as the Campbell Street Liquor Store. Ruth Ledbetter, Mr. Ledbetter's wife, is the co-owner of the real property on which this business is located. Ms. Townsend is the sole stockholder of Old Hickory Enterprises, Inc. d/b/a Old Hickory Package Store ("Old Hickory"). Mr. Ledbetter and Ms. Townsend first began discussing the sale of Ms. Townsend's liquor business in the early 1990's. Mr. Ledbetter and Ms. Townsend again discussed this topic during a wedding reception in October of 1997. They resumed this discussion in an early 1998 meeting at a restaurant in Brownsville. Mr. Ledbetter and Ms. Townsend met again on April 3, 1998 at a restaurant in Germantown. During this meeting, they each signed a document entitled "Sales Agreement" providing for the sale of Ms. Townsend's liquor business to Mr. Ledbetter for $136,946.47. Approximately two weeks later, Ms. Townsend telephoned Mr. Ledbetter and informed him that she wanted the transaction to be a stock sale. Mr. Ledbetter agreed to this request and took steps to effectuate a stock sale at the same price as the original agreement. Mr. Ledbetter then orally assigned all of his rights under this agreement to Mrs. Ledbetter.[1] Mrs. Ledbetter subsequently applied for and obtained a city liquor license. Consistent with the terms of the April 3, 1998 agreement, Mr. and Mrs. Ledbetter notified Ms. Townsend by certified mail that the closing was scheduled to take place on June 30, 1998 at Union Planters Bank. During the months of May and June, Ms. Townsend was out of town visiting Texas and Chattanooga. She did not furnish to the Ledbetters the financial and inventory information necessary to complete the closing and the licensing process.[2] Additionally, Ms. Townsend did not attend the June 30, 1998 closing.

The Ledbetters filed a complaint against Ms. Townsend and Old Hickory seeking money damages or, in the alternative, specific performance of the April 3, 1998 agreement. Ms. Townsend and Old Hickory subsequently filed an answer to the Ledbetters' complaint alleging that the April 3, 1998 agreement was invalid at the time of its execution. After a hearing on the matter, the trial court issued written findings of fact, conclusions of law, and a final order requiring Ms. Townsend to specifically perform her obligations under the parties' April 3, 1998 agreement. This appeal followed.

The issues raised on appeal, as stated by Ms. Townsend, are as follows:

1. According to Mr. Ledbetter, the purpose of this assignment was to avoid violating section 57–3–406 of the Tennessee Code Annotated, which prohibits a retailer with a liquor license from operating more that one licensed retail business.

2. On the date of the scheduled closing, Ms. Ledbetter had yet to apply for a state liquor license. According to Mr. Ledbetter, this delay was due to Ms. Townsend's failure to produce certain information including her last two months of financial statements and an inventory of all furniture, fixtures, and assets of the business.

(A) Whether the April 3, 1998 "Sales Agreement" between two parties, neither of whom possessed the legal capacity to enter into or consummate a binding contract for the sale of the Liquor Store, was a valid contract where there was no "meeting of the minds," and the document failed to include essential terms to transfer the assets of the corporation; and

(B) Whether, even if the April 3, 1998 "Sales Agreement" was, at the time it was made, a valid contract, it was not legally enforceable where the Plaintiffs (1) were prohibited by law from performing the contract; (2) failed to meet the required conditions precedent for performance; and (3) the time for performance of the contract had expired.

We review the trial court's findings of fact *de novo* with a presumption of correctness and may not reverse these findings unless they are contrary to a preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn.1996); T.R.A.P. 13(d). With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); T.R.A.P. 13(d).

 Because it is dispositive, we first address the second issue raised by Ms. Townsend. Ms. Townsend argues that, even assuming that the "Sales Agreement" signed by the parties on April 3, 1998 was a valid contract, it is nevertheless illegal and unenforceable because it was executed in violation of state law. It is well settled that the courts of Tennessee will not enforce obligations arising out of a contract or transaction that is illegal. *See Shirley v. State*, 198 Tenn. 378, 280 S.W.2d 915, 916 (1955)(holding that Shirley was not entitled to the return of money seized by the Sheriff when this money was admittedly procured through an illegal gambling transaction); *Whitley v. White*, 176 Tenn. 206, 140 S.W.2d 157, 161 (1940)(holding that Whitley was not entitled to recover commissions owed to him by White under a contract that contemplated the illegal exercise of personal and political influence by Whitley upon public officials); *Reaves Lumber Co. v. Cain–Hurley Lumber Co.*, 152 Tenn. 339, 279 S.W. 257, 258 (1926)(approving the intermediate appellate court's dismissal of a claim involving excess insurance proceeds arising out of the parties' "collusive manipulation and representation of the respective interests of [the] parties in certain fire insurance on property in which they were together interested"); *Eastern Prods. Corp. v. Tennessee Coal, Iron & R. Co.*, 151 Tenn. 239, 269 S.W. 4, 20 (1925)(refusing to enforce a contract for the sale of pig iron when only a small proportion of the capital stock of the corporation agreeing to deliver the pig iron had been bindingly subscribed); *Watterson v. City of Nashville*, 106 Tenn. 410, 61 S.W. 782, 783 (1901)(declaring that the assurance of the city's board of public works that Watterson would be paid for additional carpentry work that he performed for the city was void because the price of this additional work was not agreed upon in writing and approved by the board as required by the city's charter); *Freeman v. Thompson*, 600 S.W.2d 234, 236 (Tenn.App.1979)(holding that an agreement between a life insurance salesman and the insureds was unenforceable as violative of Tennessee's anti-rebate statutes); *Herbert v. W.G. Bush & Co.*, 42 Tenn.App. 1, 298 S.W.2d 747, 752 (1956)(refusing to enforce a covenant not to compete executed in order to satisfy a condition of an agreement for the sale of stock, finding that the covenant was in restraint of trade and thus void as against public policy); *Easterly v. Myers*, 24 Tenn.App. 688, 148 S.W.2d 640, 643 (1940)(holding that an agreement under which the parties engaged in buying and selling of grains on the market with no intention of accepting delivery of the grains purchased was void and unenforceable under a Tennessee statute providing that such activity constitutes

illegal gaming or gambling); *Cummins v. McCoy,* 22 Tenn.App. 681, 125 S.W.2d 509, 513 (1938)(holding that a side agreement of stockholders contrary to the charter and bylaws of a corporation was void and unenforceable as against public policy). Rather, Tennessee courts will leave the parties to an illegal contract where they are found, refusing to aid either party. *See Shirley,* 280 S.W.2d at 916; *Reaves Lumber Co.,* 279 S.W. at 258.

■ In the instant case, Ms. Townsend contends that her agreement with Mr. Ledbetter violated section 57–3–406 of the Tennessee Code Annotated. This statute provides in pertinent part as follows:

> No retailer licensed under § 57–3–204 shall, directly or indirectly, operate more than one (1) licensed retail business in this state. "Indirectly" means any kind of interest in such a retail business by way of stock ownership, loan, partner's interest or otherwise. A landlord shall be deemed to have an indirect interest in such a retail business when the lease agreement is based upon a percentage of profits or any other factor based upon sales of alcoholic beverages by the tenant as distinguished from being simply an interest in land for a period of time at a definite rate.

3. Section 57–3–204 of the Tennessee Code Annotated sets forth the requirements that must be met and the procedure that must be followed regarding the issuance of retailer licenses to sell alcoholic beverages. *See* Tenn. Code Ann. § 57–3–204 (Supp.1998).

4. We recognize that section 57–3–406 does not expressly state that a retailer licensed under section 57–3–204 cannot enter into a contract for the purchase of another retail business. The broad language of this statute, however, suggests that an individual who purchases a retail business also indirectly operates such a business. Thus, we think that entering into a contract for the purchase of another retail business is impliedly prohibited by section 57–3–406. Contracts that are prohibited by statute, whether expressly or impliedly, are illegal and thus unenforceable. *See Watterson,* 61 S.W. at 783.

Tenn. Code Ann. § 57–3–406(a) (Supp. 1998).[3] When the parties executed the April 3, 1998 "Sales Agreement," Mr. Ledbetter was a retailer licensed under section 57–3–204 to sell alcoholic beverages at the Campbell Street Liquor Store. Thus, Mr. Ledbetter was prohibited by section 57–3–406 from either directly or indirectly operating a second retail business in the state of Tennessee.[4] The word "indirectly" is defined very broadly under section 57–3–406 and specifically refers to "any kind of interest in such a retail business by way of stock ownership, loan, partner's interest *or otherwise.*" Tenn. Code Ann. § 57–3–406(a) (Supp.1998) (emphasis added). As evidenced by the parties' April 3, 1998 "Sales Agreement," Ms. Townsend agreed to sell her liquor business to Mr. Ledbetter. As noted above, Mr. Ledbetter orally assigned his rights under this agreement to Mrs. Ledbetter.[5] Mr. Ledbetter admitted, however, that the purpose of this assignment was to avoid the prohibition against owning more than one retail business contained in section 57–3–406. There is no evidence in the record suggesting that Mrs. Ledbetter intended to actually participate in the day to day operations of the liquor business acquired from Ms. Townsend.[6] On the contrary, Mr. Ledbetter's actions subsequent to the assignment suggest that, although his wife would be

5. Although the Ledbetters conceded that this was an oral assignment, Mr. Ledbetter produced at trial a writing dated May 23, 1998 stating "To Whom it May Concern: I hereby assign my agreement to purchase Old Hickory Package Store from Carrol Townsend to Ruth P. Ledbetter. /s/ Arvy K. Ledbetter."

6. With respect to the operation of this business, Mr. Ledbetter testified as follows:

Q. And as part of the assistance to you and profitability of these two stores, I mean, the truth is, you really were going to run them both, right, Mr. Ledbetter?

A. No, sir.

Q. No?

A. That's why she had a manager there that had been running it for her, so I thought he could run it for me as well or for my wife, whoever owned it?

**466**

the owner of the newly acquired liquor business, he intended to be the operator of this business.[7] Based on all of the evidence in the record, we are satisfied that the intended effect of the parties' agreement was to allow Mr. Ledbetter to operate a second retail business. With the enactment of section 57–3–406, the Tennessee General Assembly clearly established a public policy against this result, expressly prohibiting such activity.

Because the parties' April 3, 1998 "Sales Agreement" was executed in violation of section 57–3–406, we conclude that it is void and unenforceable. Consistent with the aforementioned authority, the trial court should have left the Ledbetters and Ms. Townsend where it found them, refusing to enforce their illegal agreement. Thus, we reverse the trial court's order requiring Ms. Townsend to specifically perform her obligations under this agreement. In light of this ruling, we find it unnecessary to address the remaining issues raised by Ms. Townsend on appeal. The costs of this appeal are assessed to Mr. and Mrs. Ledbetter, for which execution may issue if necessary.

HIGHERS, J., not participating.

HAYES, Sp. J., concurs.

---

**7.** It was Mr. Ledbetter who obtained the necessarily applications from the Tennessee Alcoholic Beverage Commission and placed a three-day notice in the local newspaper on behalf of his wife. Additionally, Mr. Ledbetter spoke to Ms. Townsend on the telephone on more than one occasion regarding the possibility of a stock sale and contacted an accountant in an effort to accommodate Ms. Townsend's request for this type of sale. Although Mrs. Ledbetter signed a letter notifying Ms. Townsend of the scheduled closing, it appears as if this letter was actually prepared and mailed by Mr. Ledbetter. Mr. Ledbetter also applied for and obtained a loan in order to finance the purchase of Ms. Townsend's liquor business. Finally, Mr. Ledbetter, rather than Mrs. Ledbetter, attended the scheduled closing at Union Planters Bank.